# EXHIBIT 8

Case 2:20-cv-12008-TGB-EAS ECF No. 1-9, PageID.232 Filed 07/28/20 Page 2 of 13
Allstate Insurance Company, et al. v. ISpine, PLLC, et al.
Exhibit 8

Velocity Agreement No: P-2019-2439

# Lien and Receivables Portfolio Purchase and Assignment Agreement

This Lien and Receivables Portfolio Purchase and Assignment Agreement ("Agreement") is entered into as of the Effective Date (as such term is defined on the signature page attached hereto) by and between Velocity MRS - Fund VI, LLC, a Texas limited liability company (referred to herein as "Velocity"), and the party set forth on the signature page attached hereto (referred to herein as "Medical Provider").

## RECITALS

WHEREAS, Medical Provider has rendered and will continue to render medical services to patients who are unable to pay the costs and expenses associated with such medical services;

WHEREAS, certain of Medical Provider's patients are pursuing claims for compensation related to personal injuries allegedly sustained as a result of the fault or negligence of third parties;

WHEREAS, Velocity, directly and through its Affiliates (as defined below), is engaged in the business of purchasing accounts receivable from certain medical providers related to personal injury claims; and

WHEREAS, Medical Provider and Velocity desire to establish a contractual relationship whereby Velocity and its Affiliates may agree now, and in the future, in writing, to purchase certain accounts receivable from Medical Provider arising out of medical services provided to patients with pending personal injury claims.

**NOW THEREFORE**, in consideration of the mutual covenants and promises contained herein, Velocity and Medical Provider agree as follows:

1. **Agreement to Purchase Accounts Receivable; Certain Definition; Affiliate Adoption.**

   a. In the event Medical Provider and Velocity mutually agree that Velocity will purchase from Medical Provider certain accounts receivables, then, subject to the terms of this Agreement, (i) Velocity and the Medical Provider will prepare and execute an accounts receivable purchase order in the form attached hereto as Schedule 1 ("Purchase Order"), and (ii) Velocity will pay to Medical Provider in accordance with Section 3 a purchase price equal to **21.00%** of the invoice amount for such accounts receivables. No Purchase Order will be valid unless signed by the Medical Provider and Velocity. Notwithstanding anything herein to the contrary, if Medical Provider sells to Velocity any accounts receivable associated with a personal injury claim, then Medical Provider shall be obligated to sell to Velocity all accounts receivable associated with such personal injury claim, and may not retain any such receivables, unless Velocity elects in its sole discretion not to purchase such receivables. In addition, Medical Provider hereby grants to Velocity a right of first refusal to purchase any and all accounts receivable of Medical Provider arising out of medical services provided by it to patients with pending personal injury claims if and to the extent Medical Provider desires to sell or assign such receivables (the "Right of First Refusal"). The purchase and sale of any such receivables that Medical Provider desires to sell or assign and that Velocity elects to purchase pursuant to the Right of First Refusal shall be on the same terms set forth in this Agreement.

   b. With respect to each Purchase Order, the term (i) "Patient" shall mean each patient identified on the applicable Purchase Order; and (ii) "Receivables" shall mean the receivables identified on the applicable Purchase Order, excluding any charges payable by funds legislatively appropriated to any federal or state health care program such as Medicare, Medicaid, CHAMPUS, and TRICARE. Along with each Purchase Order executed hereunder, Medical Provider will provide executed copies of the Required Documents (as defined in Section 5). For purposes of this Agreement, the term "Liens" means all liens associated with the Receivables purchased by Velocity hereunder and all right, title, and interest of Medical Provider in and to any proceeds recovered by the associated Patients, or on the Patients' behalf, arising out of any claim, settlement, mediation, litigation, arbitration, verdict, judgment, or other collection activity related to the personal injury claim to which the Receivables relate.

1

Case 2:20-cv-12008-TGB-EAS ECF No. 1-9, PageID.233 Filed 07/28/20 Page 3 of 13
Allstate Insurance Company, et al. v. ISpine, PLLC, et al.
Exhibit 8

Velocity Agreement No. P-2019-2439

    c. Affiliates (as defined below) of Velocity may purchase Receivables from Medical Provider pursuant to the terms and conditions of this Agreement and in accordance with the process set forth in Section 1(a) above, provided that each such Affiliate enters into a Purchase Order (along with any other forms required pursuant to Section 1(a) and/or Section 5 hereof) for such Receivables. Any Affiliate that enters into such a Purchase Order with Medical Provider will be deemed to be "Velocity" hereunder for purposes thereof; provided that such Purchase Order, together with this Agreement, will constitute a separate contract solely between Medical Provider and the Affiliate with respect to Receivables purchased by such Affiliate; and Medical Provider will look solely to such Affiliate (and not to Velocity) for satisfaction of any liability arising under or relating to the relationship between Medical Provider and such Affiliate, including without limitation, any liability arising under or relating to the purchase of Receivables by such Affiliate. For purposes of this Agreement, the term "Affiliate" means each of Velocity Medical Receivables Solutions, LLC, a Delaware limited liability company, and any other entity that directly or indirectly (through one or more intermediaries) controls, is controlled by, or is under common control with Velocity or Velocity Medical Receivables Solutions, LLC.

2. **Assignment of Receivables**. Subject to the terms of this Agreement, in consideration of the agreement of Velocity to pay to Medical Provider the Purchase Price (as defined in Section 3), Medical Provider hereby assigns, sells, transfers, conveys and delivers to Velocity all of its right, title and interest in, to, and under (a) the Receivables and Lien(s) that correspond to the applicable Purchase Order, including, without limitation, all rights of Medical Provider to collect the Receivables and enforce the Lien(s) and all rights of Medical Provider under any agreement or document pursuant to which the Lien(s) are created or assigned to Medical Provider, and (b) any letter of protection relating to the Receivables that is issued to Medical Provider (each, a "Letter of Protection").

3. **Purchase Price; Purchase Orders**.

    a. Each Purchase Order shall set forth the amount payable by Velocity to Medical Provider for, and the Invoice Amount (as such term is defined on each Purchase Order) and related services (each, a "Service") that correspond to, the Receivables and Lien(s) that are being assigned, sold, transferred, conveyed and delivered to Velocity pursuant to such Purchase Order (such amount, the "Purchase Price"). The Purchase Price will be paid to Medical Provider by Velocity within three (3) business days after the corresponding Purchase Order has been executed and delivered by Velocity and Medical Provider. Medical Provider agrees that (i) any sum that Patient may at any time owe to Medical Provider is and shall be subordinate to the Receivables assigned to Velocity in accordance with this Agreement until the Receivables have been paid in full, and (ii) if Medical Provider receives payment of any amount by or for the benefit of Patient while any part of the Receivables are still due and owing, then such amount shall be received by Medical Provider in trust for the benefit of Velocity and Medical Provider shall immediately remit such amount to Velocity for credit towards payment of the Receivables.

    b. For the limited purposes described below in this Section 3, the Receivables purchased by Velocity in accordance with this Agreement and their corresponding Purchase Orders shall be grouped together into "Pools" based upon the date the Purchase Price for the Receivables is paid by Velocity to Medical Provider (the "Purchase Price Payment Date"). Each Pool shall cover a period of three (3) calendar months (the "Pool Duration"). For each calendar year, all Receivables with a Purchase Price Payment Date that is within the same calendar quarter of such year will be grouped into a separate Pool; provided, however, that if the period between the Pool Commencement Date (as defined below) for the first Pool under this Agreement and the last calendar day of such Pool (inclusive) would be fifty percent or less of the Pool Duration, then the Pools that would have been the first and second Pools under this Agreement absent this proviso shall instead be combined into a single Pool that begins on such Pool Commencement Date and ends on the last calendar day of what would have been, absent this proviso, the second Pool under this Agreement. As used herein, "Pool Commencement Date" means, with respect to each Pool, the Purchase Price Payment Date for the first Receivables that are grouped into such Pool.

BATES NUM: 000484

Case 2:20-cv-12008-TGB-EAS ECF No. 1-9, PageID.234 Filed 07/28/20 Page 4 of 13
Allstate Insurance Company, et al. v. ISpine, PLLC, et al.
Exhibit 8

Velocity Agreement No. P-2019-2439

c. In further consideration for Velocity's agreements set forth herein, Medical Provider agrees that if on or before the date that is twenty four months following the Pool Commencement Date for a Pool (the "First Measurement Date"), or on or before any anniversary of the First Measurement Date (each such date and the First Measurement Date, a "Measurement Date"), the Receivables in such Pool have not produced an aggregate amount equal to or greater than **2.0** times the aggregate Purchase Price for the Receivables in such Pool (referred to in this subsection as the "Performance Hurdle Amount"), then within thirty days after the applicable Measurement Date Medical Provider shall assign, sell, transfer, convey and deliver to Velocity, in consideration for $1.00 paid by Velocity, all of its right, title and interest in and to Supplemental Receivables (as defined herein) and the corresponding Lien(s) and Letter(s) of Protection by executing a Purchase Order. "Supplemental Receivables" means additional Receivables having an aggregate Invoice Amount equal to three (3) times the difference between (i) the Performance Hurdle Amount applicable to the corresponding Pool and (ii) the aggregate amount received by Velocity as of the applicable Measurement Date on account of the Receivables in such Pool. All Supplemental Receivables shall be selected by Medical Provider in consultation and with the consent of Velocity. For purposes of determining whether the Performance Hurdle Amount with respect to a Pool has been met, all Supplemental Receivables that are assigned and transferred to Velocity on account of such Pool in accordance with the first sentence of this subsection shall be deemed to have been assigned and transferred to Velocity pursuant to the first Purchase Order in such Pool. For the avoidance of doubt, the process described in this subsection shall be repeated, and additional Supplemental Receivables shall continue to be conveyed by Medical Provider to Velocity in accordance with this subsection, as necessary, until the date described in the immediately following sentence or until Velocity has collected on account of all Receivables and Supplemental Receivables associated with a Pool an aggregate amount equal to the corresponding Performance Hurdle Amount, whichever first occurs. In no event shall Medical Provider be obligated to assign or convey any Supplemental Receivables associated with a Pool pursuant to this subsection after the tenth (10th) anniversary of the Pool Commencement Date for such Pool.

c. Subject to the remaining provisions of this subsection, (i) in the event that Velocity receives on account of Receivables that are purchased by Velocity pursuant to a particular Purchase Order amounts in excess of **1.80** times the applicable Purchase Price for such Receivables (referred to in this subsection as the "Year One Performance Hurdle Amount") by the first anniversary of the date of such Purchase Order, then Velocity will pay the Provider, as additional purchase price, an amount equal to **70.00%** of all amounts that Velocity receives on account of such Receivables in excess of the Year One Performance Hurdle Amount, whether received before or after the first anniversary of the date of such Purchase Order, or (ii) in the event that by the first anniversary of the date of a Purchase Order Velocity has not received on account of Receivables that are purchased by Velocity pursuant to such Purchase Order amounts in excess of the Year One Performance Hurdle Amount but after that first anniversary receives on account of such Receivables amounts in excess of **2.00** times the applicable Purchase Price for such Receivables (the "Post-Year One Performance Hurdle Amount"), then Velocity will pay the Provider, as additional purchase price, an amount equal to **50.00%** of all amounts that Velocity receives on account of such Receivables in excess of the Post-Year One Performance Hurdle Amount (any amounts payable pursuant to clause (i) or (ii), as applicable, are referred to herein as the "Additional Purchase Price").

4. **Billing Practices of Medical Provider.** With respect to the Services, Medical Provider shall bill the Patient in accordance with its standard billing policies for the Services, and consistent with all applicable regulations, codes, and/or laws of the United States and/or of each state within which the Services are provided to Patients as follows: (i) in the event Medical Provider files its billing schedules with applicable state government authorities, Medical Provider will bill the Patient for the Services in the amount set forth in such billing schedules; and (ii) in the event Medical Provider does not file its billing schedules with applicable state government authorities, Medical Provider will bill all usual and customary charges to the Patient. In no event will Medical Provider increase, mark-up or discount (a) any bill or invoice provided to the Patient associated with the Services; or (b) the Lien amount. All such bills and/or invoices will reflect that all amounts are still owed by the Patient. Bills and invoices sent to Patients will not reflect Velocity's purchase of the Receivables in any manner, including without limitation, listing

3

Case 2:20-cv-12008-TGB-EAS ECF No. 1-9, PageID.235 Filed 07/28/20 Page 5 of 13
Allstate Insurance Company, et al. v. ISpine, PLLC, et al.
Exhibit 8

Velocity Agreement No: P-2019-2439

them as payments, offsets, contractual write-offs, or adjustments. For the avoidance of doubt, the amount of the Lien shall be equal to the gross billed charges for the Services.

5. **Required Documents**. Velocity's payment obligations pursuant to Section 3 hereof are expressly conditioned on its receipt of the following documents, which Medical Provider shall deliver to Velocity with respect to each Purchase Order executed hereunder:

   a. an HCFA Form UB-04, UB-92, or HCFA 1500, or other similar billing instrument indicating invoice amounts related to the Services provided to each corresponding Patient;

   b. medical records for services rendered and each Patient Assignment Agreement or Letter of Protection, if any, relating to the corresponding Receivables (together with the above-referenced billing instruments, the "Required Documents"); and

   c. Appendix A to the Purchase Order containing the information required by Velocity hereunder in paper and in an electronic format that is reasonably acceptable to Velocity.

6. **Appointment as Servicer; Cooperation; Power of Attorney.**

   a. In consideration for Medical Provider's right to a potential Split, Velocity hereby appoints Medical Provider, and Medical Provider hereby accepts such appointment, as Velocity's agent to service the Receivables under this Agreement. In such capacity, Medical Provider shall manage and service the Receivables and enforce Velocity's rights and interests in and under each Receivable and each related Lien and Letter of Protection; and shall take, or cause to be taken, all such actions as may be necessary or advisable to service, administer and collect each Receivable, all in accordance with (i) customary and prudent servicing procedures for healthcare receivables of a similar type, and (ii) all applicable laws, rules and regulations. Notwithstanding anything herein to the contrary, Medical Provider may not adjust, reduce, forgive, settle, compromise, release, or waive any right to collect the unpaid balance of any Receivable unless (A) in connection therewith Velocity receives on account of such Receivable an amount that is not less than **42.0%** of the Invoice Amount for such Receivable, or (B) Velocity consents in writing thereto. Medical Provider shall be responsible for all expenses incurred by Medical Provider in connection with its activities as servicer hereunder. Velocity may terminate the appointment of Medical Provider hereunder at any time upon written notice.

   b. In addition to executing and delivering all required instruments and notices, Medical Provider covenants and promises that following its execution and delivery of this Agreement, it will:

      i. on the date of this Agreement and anytime thereafter upon Velocity's request, provide to Velocity electronic signatures of such representatives of Medical Provider as Velocity may specify from time to time (including, without limitation, Medical Provider's CEO, practice administrator, billing manager, and/or owner) and either electronic letterhead or physical letterhead of Medical Provider. Medical Provider hereby authorizes, and represents and warrants to Velocity that each such representative has authorized, Velocity and its Affiliates to use such signatures and letterhead solely for the purpose of notifying Patient, Patient's attorneys, and Patient's insurance provider to make all future payments on each Receivable associated with such Patient to the account or address designated by Velocity or its Affiliate. Medical Provider also will cooperate with all reasonable requests by Velocity that Medical Provider advise Patient, Patient's attorneys, and Patient's insurance provider as to such payment remittance, in order to ensure that payment is directly remitted to Velocity on a timely basis. Upon request, Medical Provider will deliver to Velocity or, upon the request of Velocity, the attorney for Patient, any then-existing documents necessary to enforce the collections of the Receivables, including without limitation, bills, medical reports, payment records, copies of any agreements with Patient and/or Medical Provider creating or assigning any lien with respect to the Receivables, and/or correspondence;

4

Case 2:20-cv-12008-TGB-EAS ECF No. 1-9, PageID.236 Filed 07/28/20 Page 6 of 13
Allstate Insurance Company, et al. v. ISpine, PLLC, et al.
Exhibit 8

Velocity Agreement No. P-2019-2439

ii. not deposit or cash, and it will immediately (and in any event within three (3) business days following receipt) deliver to Velocity, any and all checks and other forms of payment Medical Provider receives on account of the Receivables owed by patients, it being acknowledged and agreed that any violation of this Section 6(b)(ii) constitutes a material breach by Medical Provider of this Agreement. In order to facilitate the monitoring of Medical Provider's compliance with this Section 6(b)(ii), Medical Provider will deliver to Velocity by the fifteenth (15th) day of each month a report identifying all collections received by Medical Provider during the immediately preceding month on all accounts receivable that are or were held by Medical Provider (including, without limitation, the Receivables). Such report shall include the following information with respect to each collection: (A) dollar value of receipt; (B) date of receipt; (C) patient name; (D) patient date of birth; and (E) dates of service;

iii. immediately forward to Velocity any correspondence or notice relating to the Receivables, immediately report to Velocity any communication in any other form (e.g. mail, telephone, email or facsimile transmissions) relating to the Receivables, and advise the communicating party to communicate directly and solely with Velocity;

iv. make periodic (and, in any event, not less than monthly) progression calls to each Patient's insurance provider to solicit information needed to monitor claim activity and aid in collection of the Receivables, including, without limitation, information on claim status and significant developments (e.g., mediation dates, change of counsel, settlement). Medical Provider will access its billing system for information necessary to make progression calls. Medical Provider shall forward to Velocity any information it receives related to claim activity no less than every 30 days in the format specified by Velocity and shall provide Velocity access to its billing system and any outside billing company so Velocity can obtain such information it deems necessary to make its own progression calls, monitor claim activity and make collections;

v. immediately, but no less than three (3) days from receipt and/or service of such request, notify Velocity of any request for production of documentation, including, but not limited to a subpoena for business records, written request for medical and/or billing records for Patients, etc.;

vi. not grant any lien or encumbrance on any of the Receivables and/or Lien(s) to or for the benefit of, or sell or assign any of the Receivables and/or Lien(s) to, any third party;

vii. use its best efforts to maximize the recovery of the Receivables, including but not limited to complying in a timely manner with all subpoenas served on Medical Provider relating to any Patient, promptly notifying Velocity of any change in a Patient's legal counsel of which it becomes aware, and reasonably cooperating with counsel for said Patients and Velocity;

viii. comply with any reasonable request for information or documentation by Velocity and, upon reasonable request by Velocity and during regular business hours, allow Velocity or its representatives, at Velocity's expense, to inspect and audit Medical Provider's books, records, bank account statements, accounting system, billing system, billing company reports and other documents as necessary to verify compliance with the terms and conditions of this Agreement.

c. Velocity and its Affiliates shall have the right to endorse in the name of Medical Provider, or any affiliated entity controlled by Medical Provider through which it does business, or operates under, and deposit checks that it receives from payers on account of Receivables. Medical Provider hereby grants to Velocity and its Affiliates an irrevocable power of attorney sufficient to empower Velocity and its Affiliates to discuss collections with Medical Provider's attorneys, execute or endorse in the name of Medical Provider, and any controlled affiliates, or other names through which it does business, (i) any document required in order to perfect and/or record the security interest intended to be granted to Velocity under Section 9 of this Agreement in all Receivables; (ii) any document or instrument required in connection with the negotiation for its own account, or deposit to its own accounts, of payments made payable to Medical Provider on account of the Receivables;

5

BATES NUM: 000487

Case 2:20-cv-12008-TGB-EAS ECF No. 1-9, PageID.237 Filed 07/28/20 Page 7 of 13
Allstate Insurance Company, et al. v. ISpine, PLLC, et al.
Exhibit 8

Velocity Agreement No. P-2019-2439

and (iii) any documents that Medical Provider has agreed to execute and deliver under the provisions of this Agreement. The foregoing power of attorney is coupled with an interest and irrevocable.

7. **Representations and Warranties of Medical Provider**: Medical Provider represents and warrants as follows:

   a. There are no claims, actions, suits, or judgments pending against Medical Provider related to the Services and/or Patient;

   b. There have been no disciplinary actions brought against Medical Provider;

   c. There have been no allegations or claims of improper billing, false billing or insurance fraud brought against Medical Provider;

   d. Medical Provider is the sole and exclusive owner of, and has valid title to, the Receivables and Liens to be transferred under this Agreement. Such Receivables and Liens, and all documents and agreements executed by Medical Provider or Patient in connection therewith, are valid, enforceable, and in good standing, and are not subject to any liens, encumbrances, claims of set-off, or other defenses or counterclaims. The Receivables and Liens to be transferred under this Agreement constitute only undisputed claims of Medical Provider;

   e. All bills and invoices which were the basis for the Receivables are true and accurate in all respects. All bills and invoices generated by Medical Provider are usual and customary amounts for the Services;

   f. All Services rendered and billed were necessary (with respect to the applicable Patient), the amounts charged for the Services were reasonable at the time and place of the Services provided, and the Services provided to Patient related to injuries sustained as a result of or in the accidents or other occurrences which are the basis of claims or litigation, and the proceeds from which are subject to Letters of Protection and/or Liens securing the total amount of the Receivables;

   g. Medical Provider has billed Patient in accordance with its standard billing policies for the Services, and consistent with all applicable regulations, codes, and/or laws of the United States and/or of each state within which the Services are provided;

   h. Patient has not been released from any obligation under the Receivables or any Liens; Medical Provider has not received payment from Patient or any third party for any portion of the Receivables; and each Receivable arises out of medical services provided to Patients with personal injury claims that, as of the date the corresponding Receivable is transferred to Velocity, are held by the corresponding Patient and have not been resolved through settlement, mediation, litigation, arbitration, verdict, judgment, order, or otherwise;

   i. Medical Provider has made no statement or representation to Velocity prior to the execution and delivery of the Agreement which was misleading or untrue as to any material fact, or omitted or failed to disclose any material fact related to this Agreement;

   j. This Agreement was duly authorized by Medical Provider;

   k. Medical Provider is not bound by any existing agreements, arrangements, options, laws, or regulations restricting in any manner the transfer of any rights or interests in the Receivables or Liens or its power to enter into this Agreement;

   l. None of the Receivables listed on any Purchase Order are payable by funds legislatively appropriated to any federal or state health care program such as Medicare, Medicaid, CHAMPUS, and TRICARE; and

6

Case 2:20-cv-12008-TGB-EAS  ECF No. 1-9, PageID.238  Filed 07/28/20  Page 8 of 13
Allstate Insurance Company, et al. v. ISpine, PLLC, et al.
Exhibit 8

Velocity Agreement No. P-2019-2439

   m. Each Receivable has been originated, maintained, and serviced by Medical Provider in compliance with applicable local, state, and federal laws. Without limiting the foregoing, Medical Provider specifically represents and warrants as follows:

      i. Medical Provider has not and will not submit any claim to any Payment Program in connection with any referrals that violate any applicable self-referral law, including without limitation the Federal Ethics in Patient Referrals Act, 42 U.S.C. § 1395nn (known as the "Stark Law"), or any applicable state self-referral law. "Payment Program" means Medicare, TRICARE, Medicaid, Worker's Compensation, Blue Cross/Blue Shield programs, and all other health maintenance organizations, preferred provider organizations, health benefit plans, health insurance plans, and other third party reimbursement and payment programs that pay for all or some claims with revenue legislatively appropriated to federal or state health care programs;

      ii. Medical Provider has and will comply with all disclosure requirements of all applicable self-referral laws, including without limitation the Stark Law and any applicable state self-referral law;

      iii. Medical Provider has not and will not knowingly or willfully solicit, receive, pay or offer to pay any remuneration, directly or indirectly, overtly or covertly, in cash or kind for the purpose of making or receiving any referral which violates any applicable anti-kickback law, including without limitation the Federal Health Care Program Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) (known as the "Anti-Kickback Statute"), or any applicable state anti-kickback Law. Medical Provider has not and will not submit any claim for payment to any Payment Program in violation of any laws relating to false claim or fraud, including without limitation, the Federal False Claim Act, 31 U.S.C. § 3729, or any applicable state false claim or fraud law;

      iv. There is no Payment Program survey, review or investigation in progress with respect to Medical Provider or its business including, without limitation, a review or investigation by any state or federal office of inspector general or any private payor's special investigative unit; and

      v. Medical Provider has not and will not engage in any discounting or fee forgiving practices that would violate any Payment Program obligations to collect co-payments, co-insurance, or any other patient responsibility portion of a bill.

8. **Receivable/Invoice Amount Reduction.**

   a. Medical Provider understands and agrees that a primary consideration for the payments to Medical Provider as specifically outlined under Section 3 above is Medical Provider's representations and warranties contained within this Agreement, including those representations and warranties under Section 7 above.

   b. Medical Provider further acknowledges that the amount paid by Velocity under Section 3 above is contingent upon, and Velocity has specifically agreed to pay Medical Provider in said amount based upon, the accuracy of the representations and warranties of Medical Provider contained herein.

   c. Medical Provider further agrees that, should a court of competent jurisdiction find that the amount billed and/or invoiced for the Services is an amount less or greater than the Invoice Amount reflected in the Purchase Order as a result or in breach of any of Medical Provider's representations and warranties contained within this Agreement, including, but not limited to those in Sections 7(e) and 7(k), above, Velocity shall be entitled to an amount equal to the difference (if any) between the proportionate reduction of the Invoice Amount as reflected in the Purchase Order, and the amount of the Services as determined by the court of competent jurisdiction, in addition to any and all attorneys' fees and cost incurred by Velocity, and any and all other remedies which may be available to Velocity at law or in equity for such material breach by Medical Provider. Velocity shall have the right to enforce such agreement of Medical Provider by action for injunctive relief and specific performance to the extent permitted by law.

Case 2:20-cv-12008-TGB-EAS ECF No. 1-9, PageID.239 Filed 07/28/20 Page 9 of 13
Allstate Insurance Company, et al. v. ISpine, PLLC, et al.
Exhibit 8

Velocity Agreement No. P-2019-2439

d. In the event Medical Provider is obligated to pay any amounts to Velocity under this Section 8, Medical Provider agrees to pay Velocity such amounts within thirty (30) days of written demand for payment by Velocity. The remedies set forth in this Section 8 shall be in addition to any and all other remedies at law and equity.

9. **Sale Treatment; Security Interest.** Medical Provider and Velocity acknowledge and agree that the assignment, transfer, conveyance, and delivery of the Receivables and Liens by Medical Provider to Velocity in accordance with this Agreement are intended to and do constitute a sale for all purposes. Medical Provider agrees to: (i) treat transfers to Velocity of the Receivables and Liens as a sale for all purposes; (ii) not treat any Receivables or Liens as an asset on Medical Provider's books and records or claim any ownership interest in any Receivables or Liens; (iii) not assign or grant any security interest in any of the Receivables or Liens; and (iv) obtain all consents from Patients that are required by law in order for Velocity or its designee to obtain information needed to obtain payment from the proceeds of a Patient's related claim or lawsuit. In the event that, contrary to the mutual intent of Medical Provider and Velocity, the sale and purchase of any Receivables and Liens hereunder is not characterized as a sale, then Medical Provider hereby grants to Velocity, effective as of the Effective Date, a first priority lien and security interest on, in, and to all of Medical Provider's accounts receivable, all related instruments, contract rights, chattel paper, general intangibles, and books and records, and all rights, remedies, supporting obligations, guarantees, security interests, and liens in respect of any of the foregoing, in each case whether now owned or hereafter acquired or arising, and all products and proceeds of the foregoing to secure the repayment of all amounts paid to or for the benefit of Medical Provider in connection with this Agreement and all other obligations of Medical Provider in connection with this Agreement. This Agreement shall be deemed to be a security agreement for such purposes. Velocity shall have the right from time to time and at any time to file appropriate financing statements and amendments thereto with such offices and take such other actions as Velocity may deem advisable in its sole discretion to perfect the security interests created or purported to be created by this Agreement.

10. **Indemnification and Remedies.**

    a. **MEDICAL PROVIDER SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS VELOCITY, ITS AFFILIATES, AND THEIR OFFICERS, DIRECTORS, MANAGERS, EMPLOYEES, ASSIGNS, AND AGENTS FROM AND AGAINST, AND SHALL PROMPTLY (AND IN ANY CASE WITHIN 30 DAYS OF WRITTEN DEMAND BY VELOCITY) PAY AND REIMBURSE EACH OF THEM FOR, ANY AND ALL LIABILITIES, LOSSES, DIRECT AND THIRD PARTY CLAIMS, CAUSES OF ACTION, JUDGMENTS, DAMAGES, COSTS AND EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES) INCURRED OR SUSTAINED BY, OR IMPOSED UPON, ANY OF THEM ARISING OUT OF OR RELATED TO (A) ANY BREACH OF THE REPRESENTATIONS, WARRANTIES, AND COVENANTS OF MEDICAL PROVIDER SET FORTH HEREIN; AND/OR (B) ANY SERVICING OR COLLECTION ACTIVITIES BY PROVIDER PURSUANT TO THIS AGREEMENT OR ANY CLAIM OR DEFENSE BROUGHT OR ASSERTED BY ANY PATIENT RELATED TO ANY SERVICES.**

    b. If the representation and warranty of Medical Provider in Section 7(h) is inaccurate or breached by Medical Provider with respect to any Receivable that is conveyed to Velocity pursuant to a Purchase Order (a "Section 7(h) Breach"), then Medical Provider shall pay to Velocity an amount (the "Liquidated Damages") equal to **2.0** times the Allocated Purchase Price, whereby "Allocated Purchase Price" means the product of (i) the aggregate Purchase Price for all of the Receivables and Lien(s) that are being conveyed to Velocity pursuant to such Purchase Order, multiplied by (ii) a fraction, the numerator of which is the Invoice Amount that corresponds to the Receivable with respect to which the Section 7(h) Breach has occurred, and the denominator of which is the aggregate Invoice Amount for all of the Receivables and Lien(s) that are being conveyed to Velocity pursuant to such Purchase Order. The parties intend that the Liquidated Damages constitute compensation, and not a penalty. The parties acknowledge and agree that Velocity's harm caused by a Section 7(h) Breach would be impossible or very difficult to accurately estimate and that the Liquidated Damages are a reasonable estimate of the anticipated or actual harm that might arise from a Section 7(h) Breach. Medical Provider's payment of the Liquidated Damages is Medical Provider's sole liability and entire obligation and Velocity's exclusive

8

Case 2:20-cv-12008-TGB-EAS ECF No. 1-9, PageID.240 Filed 07/28/20 Page 10 of 13
Allstate Insurance Company, et al. v. ISpine, PLLC, et al.
Exhibit 8

Velocity Agreement No. P-2019-2439

remedy for any Section 7(h) Breach. Medical Provider covenants and agrees that it will not, and hereby waives any right to, contest the reasonableness of the Liquidated Damages, to assert that the Liquidated Damages constitutes a penalty, or to otherwise challenge the enforceability of this Section 10(b).

c. Notwithstanding anything to the contrary in this Agreement, and without prejudice to any other right or remedy it has or may have, Velocity may, without notice to Medical Provider, set off or recoup any liability or amount it owes to Medical Provider against any liability or amount for which Velocity determines in good faith Medical Provider is liable to Velocity or its Affiliates, whether either liability is matured or unmatured, is liquidated or unliquidated, or arises under or in connection with this Agreement. Medical Provider waives any right to seek or recover from Velocity or its Affiliates any consequential or indirect damages that arise out of or relate to any such set-off or recoupment that a court of competent jurisdiction determines is unlawful.

d. All rights and remedies provided in this Agreement are cumulative and not exclusive, and the exercise by either party of any right or remedy does not preclude the exercise of any other rights or remedies that may now or subsequently be available at law, in equity, by statute, in any other agreement between the parties or otherwise. Despite the previous sentence, the parties intend that Velocity's right to liquidated damages in accordance with Section 10(b) is the exclusive remedy for a Section 7(h) Breach.

11. **Attorney's Fees.** If the event a dispute arises under this Agreement, the prevailing party in such dispute will be entitled to recover from the other party reasonable attorney's fees incurred in connection with such dispute.

12. **Severability of Provisions.** The provisions contained in this Agreement will be deemed to be severable, and the invalidity of any provision will not affect the validity or enforceability of any other provision.

13. **Binding Effect.** All of the terms and provisions of this Agreement and its associated Exhibits and Schedules are binding upon, inure to the benefit of, and are enforceable by Velocity and the Medical Provider and their respective administrators, executors, legal representatives, heirs, successors and permitted assigns.

14. **Waiver.** The failure of either Velocity or the Medical Provider to insist upon the performance of any of the terms and conditions of this Agreement, or the waiver of any breach of the terms and conditions of this Agreement, shall not be construed as thereafter waiving any such terms and conditions, but the same shall continue and remain in full force and effect as if no such forbearance or waiver had occurred.

15. **Headings.** The headings contained in this Agreement are for convenience only and do not limit or otherwise affect the meaning or interpretations of this Agreement.

16. **Counterparts; Electronic Signatures.** This Agreement and each Purchase Order may be executed in any number of counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute the same agreement. Each party agrees that any electronic signatures of the parties included in this Agreement or any Purchase Order are intended to authenticate this Agreement or such Purchase Order, as applicable, and to have the same force and effect as manual signatures. For purposes hereof, "electronic signature" means any electronic symbol or process attached to or logically associated with a record and executed and adopted by a party with the intent to sign such record, including facsimile or email electronic signatures. Delivery of an executed counterpart of this Agreement or a Purchase Order by electronic or facsimile transmission shall be equally as effective as delivery of an original executed counterpart of this Agreement or such Purchase Order, as applicable.

17. **Choice of Law & Venue.** The validity, interpretation, and performance of this Agreement shall be controlled by and construed under the laws of the State of Texas. Any legal or equitable suit, action, or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby shall be instituted in the federal courts of the United States of America or the courts of the State of Texas in each case located in Travis County, Texas, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action, or proceeding.

9

BATES NUM: 000491

Case 2:20-cv-12008-TGB-EAS ECF No. 1-9, PageID.241 Filed 07/28/20 Page 11 of 13
Allstate Insurance Company, et al. v. ISpine, PLLC, et al.
Exhibit 8

Velocity Agreement No. P-2019-2439

18. **Confidentiality.** Each of Velocity and the Medical Provider may be given access to the other party's Confidential Information (as defined below) hereunder. "Confidential Information" shall mean, the terms of this Agreement, and the non-public business and technical information of the disclosing party. Medical Provider shall not disclose to any third party, including without limitation lawyers or other professionals, the terms of this Agreement without the prior written consent of Velocity. Neither Velocity nor the Medical Provider will (a) disclose the Confidential Information of the other party to any third party; or (b) use the Confidential Information of the other party except as necessary to perform its obligations hereunder. Notwithstanding the foregoing, the receiving party may disclose the Confidential Information of the disclosing party pursuant to a valid subpoena or court order, provided that the receiving party notifies the disclosing party in writing in advance of such disclosure, provided that such notice is permitted pursuant to applicable law. Confidential Information will not include information which: (a) is or becomes available to the general public through no fault of the party receiving the Confidential Information; or (b) is rightfully received by the receiving party from a third party without a duty of confidentiality. Medical Provider acknowledges and agrees that (i) in connection with this Agreement, Velocity may refer potential patients in need of health care services to Medical Provider with the intention of purchasing the receivables associated with such medical services from Medical Provider pursuant to the terms of this Agreement; and (ii) Medical Provider shall not circumvent Velocity to receive payment from such potential patients for such medical services and/or circumvent Velocity to secure a lien in connection with such receivables. The provisions of this Section 18 shall survive any termination or expiration of this Agreement for a period of three (3) years.

19. **HIPAA.** Velocity and Medical Provider acknowledge that each is a Business Associate and Covered Entity, respectively, as defined in the regulations promulgated at 45 CFR, Parts 160, 162, 164 and 614 under the Health Insurance Portability and Accountability Act of 1996, as subsequently amended ("HIPAA") and that they will comply with such regulations on or before the date that compliance is required by regulations. All capitalized terms in this section not defined herein shall have the meaning as set forth in 45 CFR, Part 160 and 164. Medical Provider agrees that either (a) it will have obtained from each Patient a valid and HIPAA-compliant authorization to disclose Protected Health Information ("PHI") pertaining to any Receivable relating to such Patient prior to disclosing any such PHI to Velocity, or (b) it will enter into a Business Associate Agreement with Velocity in furtherance of this Agreement prior to exchanging any such PHI. Nothing in this Agreement will be construed to require Velocity or the Medical Provider to use or disclose PHI other than in accordance with the Privacy Standards and applicable state law. Each of Velocity and the Medical Provider agrees that only the minimum necessary PHI will be requested to accomplish the intended purpose of the request. Each of Velocity and the Medical Provider represents that any Business Associate that requests or receives PHI on behalf of such party shall have entered into an agreement with such party that contains the written assurances required by HIPAA, subject to any modifications required by state law.

20. **Assignment.** Subject to Section 1(b), this Agreement shall be binding upon and inure to the benefit of Velocity and the Medical Provider and their respective successors and assigns.

21. **Further Assurances.** Each of the parties hereto shall execute and deliver such additional documents, instruments, conveyances, and assurances and take such further actions as may be reasonably required to carry out the provisions hereof and give effect to the transactions contemplated hereby.

22. **Entire Agreement.** This Agreement, together with the Purchase Orders, represents the entire understanding and agreement between Velocity and the Medical Provider as to the subject matter herein and thereof and supersedes all other negotiations, understandings, and representations made by and between Velocity and the Medical Provider. The Parties acknowledge that they have signed this Agreement of their own free will without any sort of coercion or duress, knowingly and voluntarily, and was not coerced or threatened in any manner. The Parties expressly warrant and represent that no promise, statement, representation or agreement that is not herein expressed has been made in connection with or as an inducement their execution of this Agreement. The Parties further warrant and represent that in executing this Agreement: (i) the Parties are relying upon their own judgment and the advice of their attorney, if any, and (ii) that the Parties expressly acknowledge and agree that they are not relying upon any promise, statement, representation or agreement of any agent or representative of the Parties' that is not expressly

BATES NUM: 000492

Case 2:20-cv-12008-TGB-EAS ECF No. 1-9, PageID.242 Filed 07/28/20 Page 12 of 13
Allstate Insurance Company, et al. v. ISpine, PLLC, et al.
Exhibit 8

Velocity Agreement No. P-2019-2439

contained in this Agreement. The terms of this Agreement shall be construed in order to give full effect to the provisions contained herein and any ambiguity in the terms of this Agreement shall not be construed against the maker hereof. This Agreement may not be amended or modified except in a writing signed by Velocity and the Medical Provider.

[Signatures appear on the following page(s).]

11

Case 2:20-cv-12008-TGB-EAS ECF No. 1-9, PageID.243 Filed 07/28/20 Page 13 of 13
Allstate Insurance Company, et al. v. ISpine, PLLC, et al.
Exhibit 8

Velocity Agreement No. P-2019-2439

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date set forth below.

**Effective Date:** June 28, 2019

**Medical Provider:** ISpine, PLLC          **Federal ID #:** ▮▮▮▮▮

Address of Medical Provider:              Address of Velocity:
23077 Greenfield Road, Suite 280          9211 Arboretum Parkway, Suite 500
Southfield, MI 48075                      Richmond, Virginia 23236

**ISpine, PLLC:**                         **VELOCITY MRS - FUND VI, LLC:**

By: _____             By: _____
Stefan G. Pribil, MD, Executive Officer       Mark G. Guedri, Chief Executive Officer

Velocity Agreement No. P-2019-2439

BATES NUM: 000494