UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY; ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY; ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY; ESURANCE INSURANCE COMPANY; and ESURANCE PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>SURGICAL CENTER OF SOUTHFIELD, LLC; NORTHWEST NEUROLOGY, P.C.; PERFORMANCE ORTHOPEDICS OF MICHIGAN PLLC; TESSY JENKINS, M.D.; and ROBERT SWIFT, D.O.,<br><br>Defendants. | C.A. No. 20-cv-12008-TGB-EAS |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS NORTHWEST NEUROLOGY, P.C. AND TESSY JENKINS, M.D.'S MOTION TO AMEND THEIR ANSWER TO PLAINTIFFS' COMPLAINT TO ASSERT A COUNTERCLAIM**

# **TABLE OF CONTENTS**

Table of Contents ................................................................................. i

Issues Presented ................................................................................. ii

Controlling Authorities ...................................................................... iii

Opposition to Defendants Northwest Neurology, P.C. and Tessy Jenkins, M.D.'s
Motion to Amend Their Answer to Plaintiffs' Complaint
to Assert a Counterclaim .................................................................... 1

   I.    Introduction ............................................................. 1

   II.   Discussion ................................................................ 2

        A. Standard of Review ............................................ 2

        B. The Defendants Have Not Met Their Burden to Show Good Cause
          Why They Failed to Meet the Deadline for Amendment .................... 3

        C. The Defendants' Motion Should Be Denied Because the Proposed
          Amendment Is Prejudicial ................................... 6

        D. The Defendants' Motion Should Be Denied Because the Proposed
          Amendment Is Futile .......................................... 8

            1.  The Counterclaim Fails Basic Pleading Standards .................... 9

            2.  The Counterclaim Is Time-Barred ......................... 11

            3.  The Counterclaim Fails To Plead Standing .............. 13

            4.  The Counterclaim Is Duplicative ........................... 16

   III.  Conclusion ............................................................. 17

## ISSUES PRESENTED

1. Should the Court grant leave for defendants Northwest Neurology, P.C. and Tessy Jenkins, M.D. to amend their answer and assert a counterclaim?

   Allstate answers: No
   Northwest Neurology, P.C. answers:  Yes
   Tessy Jenkins, M.D. answers:  Yes

2. Have the defendants met their burden to show good cause why they failed to meet the deadline to amend?

   Allstate answers: No
   Northwest Neurology, P.C. answers:  Yes
   Tessy Jenkins, M.D answers:  Yes

3. Is the proposed amendment prejudicial?

   Allstate answers:  Yes
   Northwest Neurology, P.C. answers:  No
   Tessy Jenkins, M.D answers:  No

4. Is the proposed amendment futile?

   Allstate answers:  Yes
   Northwest Neurology, P.C. answers:  No
   Tessy Jenkins, M.D answers:  No

## <u>CONTROLLING AUTHORITIES</u>

<u>STATUTES</u>

Mich. Comp. Laws § 500.3112

<u>CASES</u>

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009)

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007)

<u>Carson v. U.S. Office of Special Counsel</u>, 633 F.3d 487 (6th Cir. 2011)

<u>Commerce Benefits Group, Inc. v. McKesson Corp.</u>, 326 Fed. Appx. 369 (6th Cir. 2009)

<u>Covenant Med. Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 895 N.W.2d 490 (Mich. 2017)

<u>Crawford v. Roane</u>, 53 F.3d 750 (6th Cir. 1995)

<u>Holden v. Cty. of Saginaw</u>, 2005 U.S. Dist. LEXIS 62713 (E.D. Mich. June 30, 2005)

<u>Korn v. Paul Revere Life Ins. Co.</u>, 382 F. App'x 443 (6th Cir. 2010)

<u>Leary v. Daeschner</u>, 349 F.3d 888 (6th Cir. 2003)

<u>Northampton Rest. Group, Inc. v. FirstMerit Bank, N.A.</u>, 492 Fed. Appx. 518 (6th Cir. 2012)

<u>Oliney v. Gardner</u>, 771 F.2d 856 (5th Cir. 1985)

<u>Spectrum Health Hospitals v. Farm Bureau Mutual Insurance Company of Michigan, <em>et al.</em></u>, 2020 Mich. App. LEXIS 1243 (Mich. App. Feb. 18, 2020)

**R<span>ULES</span>**

Fed. R. Civ. P. 5

Fed. R. Civ. P. 8

Fed. R. Civ. P. 15

Fed. R. Civ. P. 16

Plaintiffs Allstate Insurance Company and its affiliates (collectively, "Allstate") hereby submit the within brief in support of their opposition to defendants' Northwest Neurology, P.C. ("Northwest Neurology") and Tessy Jenkins, M.D.'s ("Jenkins") (collectively, the "defendants") "Motion for Leave to Ammend Their Answer to Plaintiff's Complaint to Assert a Counterclaim Pursuant to Rule to Fed. R. Civ. P. 15(a)(2)" (all grammatical and spelling errors original) (ECF No. 72, hereinafter "motion to amend").

## I.   __INTRODUCTION__

The defendants filed their motion to amend far too late.  The defendants answered Allstate's Complaint nearly six (6) months ago on October 13, 2020, at which point their own pleading expressly acknowledged that they were aware of and understood all relief sought by Allstate's Complaint.  *See* ECF No. 37.  The defendants then stipulated nearly five (5) months ago, on November 9, 2020, that any amendments to the pleadings would be filed by February 18, 2021.  *See* ECF No. 47, PageID 1196.  The defendants let that deadline pass without making any effort to add the extensive counterclaims they now seek leave to file.  Indeed, the defendants did not exhibit any interest at all in pursuing a counterclaim in this action until it became clear to them that Allstate was not going to acquiesce to their bad faith disregard for their discovery obligations and that they are likely to face consequences as a result thereof.  *See* ECF No. 60 (Allstate's motion to compel and

for sanctions against the defendants).  The defendants' proposed counterclaim is a classic example of a litigant attempting to retaliate against adverse developments with a harassing pleading and the Court should not permit such conduct.

As detailed below, not only do the defendants fail to provide any good cause for their delay in seeking to file their proposed counterclaim, the pleading they ask for leave to file is haphazard, incomprehensible, and clearly barred as a matter of law.  In other words, the defendants' proposed counterclaim is futile and if they are granted leave to file it, both Allstate and the Court will be needlessly required to expend additional time and resources to dispose of a filing that was never seriously researched or constructed in the first place.  Accordingly, the Court should deny the defendants' motion and should not allow the filing of their proposed counterclaim.

## II.    DISCUSSION

### A.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a) provides that after the expiration of time for amendment as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  But once the scheduling deadline for amending pleadings also expires, "a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend" and the district court must evaluate prejudice to the nonmoving party "before a court will [even] consider whether amendment is proper under Rule 15(a)."  Commerce Benefits Group, Inc.

2

v. McKesson Corp., 326 Fed. Appx. 369, 376 (6th Cir. 2009), citing Leary v. Daeschner, 349 F.3d 888, 909 (6th Cir. 2003).

Federal Rule of Civil Procedure 16(b)(4) states that "[a] schedule may be modified only for good cause and with the judge's consent."  The court must consider potential prejudice to the nonmovant.  *See* Leary, 349 F.3d at 909.  But even in the absence of prejudice to the nonmoving party, the moving party must still show good cause for failing to move within the scheduling deadlines.  *See* Korn v. Paul Revere Life Ins. Co., 382 F. App'x 443, 450 (6th Cir. 2010).

If a court agrees that the moving party has shown good cause for its delay, then it will proceed to evaluate whether justice requires leave to amend pursuant to Fed R. Civ. P. 15(a).  Under that rule, "leave to amend 'should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile.'"  Carson v. U.S. Office of Special Counsel, 633 F.3d 487, 495 (6th Cir. 2011), quoting Crawford v. Roane, 53 F.3d 750, 753 (6th Cir. 1995).

## B. THE DEFENDANTS HAVE NOT MET THEIR BURDEN TO SHOW GOOD CAUSE WHY THEY FAILED TO MEET THE DEADLINE FOR AMENDMENT

The parties in this case, including Allstate, Northwest Neurology, and Jenkins, agreed and stipulated that the deadline for joinder of parties and amendment of pleadings was February 18, 2021.  *See* ECF No. 47, PageID 1196.  The defendants

did not move for leave to amend until March 23, 2021, more than a month after the agreed-upon deadline.  *See* ECF No. 72.

The defendants offer essentially no explanation for why they did not assert their counterclaim with their original answer or at any time within the following four (4) months before the deadline for amendment.  Their only comment on the subject is that the "Defendants' Answer omitted a Counter Claim because Defendants did not realize that Plaintiffs' Complaint seek (sic) to avoid payment for the services rendered by Defendants' (sic) Allstate Insured (sic), and which billings remain unpaid by Plaintiffs Allstate and its affiliate, Esurance in the past 16 months."  *See* ECF No. 72, PageID 1729.

The defendants' failure to read the operative Complaint is not "good cause" for failing to abide by deadlines.  Allstate's Complaint, filed more than eight (8) months ago, includes a count for declaratory judgment with a demand for relief asking the Court to declare:

> Allstate has no obligation to pay pending and previously denied No-Fault insurance claims submitted by … Northwest Neurology, P.C. … Tessy Jenkins, M.D. ... for any or all of the reasons set out in the within Complaint.

*See* ECF No. 1, PageID 144, Count XIX(a).  In fact, the defendants answered this count last October with a soapbox argument that unequivocally shows that they were fully aware of the relief sought by Allstate at the time of their original answer. Specifically in response to Count XIX, the defendants answered:

4

> All bills submitted by Tessy Jenkins and Northwest Neurology were for necessary services as demanded by the treating Neurosurgeon, and were lawful services with respect to all the patients.
> …
> Tessy Jenkins and Northwest Neurology deserve to be paid for the services rendered.  All treatments by Tessy Jenkins and were lawful, and defendants deserved to be paid, even if there are receivables.

*See* ECF No. 37, ¶¶ 683, 689.  Then, in response to Allstate's demands for relief, the defendants further argued that Allstate's 146-page RICO complaint with specific exemplars "is just a smokescreen; an attempt by Allstate to deny payment for services rendered by Tessy Jenkins and Northwest Neurology."  *See* ECF No. 37, Count XV (sic) Demand for Relief: All Counts.

Given this history, it is baffling that the defendants would claim they only just realized that "Plaintiffs' Complaint seek (sic) to avoid payment for the services rendered by Defendants."  *See* ECF No. 72, PageID 1729.  The defendants have no excuse for waiting more than eight (8) months into litigation, and half of the discovery period,[1] and more than a month past the agreed upon deadline, before "realizing" they would like to assert a counterclaim.

---

[1] The defendants' claim that this case is still in "early discovery" (*see* ECF No. 72) is extremely concerning.  Allstate has been diligently attempting to obtain discovery from these defendants for nearly six (6) months to virtually no avail.  Indeed, the defendants have been expressly warned by the Court that they will be sanctioned if they do not finally comply with Allstate's discovery first served on November 10, 2020.  *See* ECF No. 68, PageID 1582.  The discovery period is half-expired, not just beginning.  It is imperative that Allstate get the written materials it has properly sought and start taking depositions and working with its experts.  Adding an entirely new counterclaim at this late juncture, particularly by defendants who have refused

"The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements.'" Commerce Benefits Group, Inc., 326 Fed. Appx. 369, 377.  In light of the time elapsed since Allstate's Complaint was filed in July 2020, the fact that the defendants themselves have admitted in filings that they were well aware of the relief sought by Allstate's Complaint at the time of their original answer, and the passing of the parties' agreed upon deadline for amendment over a month ago, the Court should find that the defendants have failed to demonstrate diligence in attempting to meet applicable deadlines and have failed to show good cause for amending the case management deadlines to accommodate their delay.

## C.   THE DEFENDANTS' MOTION SHOULD BE DENIED BECAUSE THE PROPOSED AMENDMENT IS PREJUDICIAL

Under both Fed. R. Civ. P. 15(a) and 16(b), the Court must consider whether the moving parties' request to amend is prejudicial to the non-moving party.  Here, the defendants' late-filed motion to amend will prejudice both Allstate's ability to prepare defenses to the proposed counterclaim (which, as detailed below, will be extensive) and its ability to prosecute its RICO case against the remaining defendants.  Half of the discovery period in this case has now passed and the

---

to engage at all in the discovery process, will surely result in prejudice as there is no reason to believe that Allstate will be able to conduct discovery into its defenses during the limited time remaining under the Court's Scheduling Order given the defendants' conduct to date.

defendants have still failed to meaningfully participate in discovery.  Allstate was forced to move to compel the defendants to respond to timely served discovery requests, and the defendants still have not made any meaningful production.  *See* ECF No. 60.  With the defendants' effectively turning 30-day deadlines into 180-day deadlines through their cavalier disregard of the discovery process, they should not now be heard to argue that there is plenty of time left in discovery for them to raise new causes of action.

The defendants' counterclaim seeks to add claims for No-Fault benefits relative to 71 individual patients.  *See* ECF Nos. 72, PageID 1741-1742 and 72-1, PageID 1745.  These claims pertain to the same patients for whom Allstate requested medical files on November 10, 2020 and which the defendants have refused to produce.  *See* ECF No. 60.  Adding new claims relative to these patients will increase the amount of material Allstate will require from both the defendants and their third-party associates, despite the fact that Allstate has already been completely unable to obtain any of these documents due to the defendants' misfeasance.  Indeed, because of the defendants' delay and disregard for discovery obligations, Allstate is already facing a severely curtailed timeline to prepare its own properly pleaded causes of action for trial.  Curtailed discovery is advantageous to the defendants who stand accused of fraud.  Allowing the defendants to interpose further time pressures on Allstate by raising new causes of action almost a year after this action commenced

deepens the defendants' improper advantage by way of their own neglect and delinquency. This is a result the Court should not allow. *See, e.g.,* <u>Leary</u>, 349 F.3d at 909 (district court did not abuse discretion in denying motion for leave to amend because moving party failed to show good cause and nonmoving party would suffer prejudice).

### D. THE DEFENDANTS' MOTION SHOULD BE DENIED BECAUSE THE PROPOSED AMENDMENT IS FUTILE

In addition to being egregiously and inexplicably late, the defendant's motion is futile because their proposed counterclaim fails to state a claim upon which relief can be granted. Despite the fact that the defendants brought their motion to amend over a month past the deadline, they did not use the extra time to confirm its legal propriety or plead it properly.[2] The proposed counterclaim seeks $859,565.67 in damages (plus costs, interest, and attorney's fees) but it spans only two pages. *See* ECF No. 72-1, PageID 1826-1827. This stretches the definition of a "short and plain statement of the claim" past its breaking point. *See* Fed. R. Civ. P. 8(a)(2). As detailed below, had the defendants added any further detail, such as the dates that

---

[2] In addition to waiting six (6) months to attempt to raise these claims, and more than one (1) month after the agreed-upon amendment deadline, the defendants also waited nearly two (2) weeks after they informed the Court at the conference on March 11, 2021 that they intended to make this filing. This leisurely pace does not reflect a serious attempt to raise claims; it evidences that this filing is yet another attempt to delay this litigation and being required to answer for the fraud these defendants perpetrated on Allstate.

services were allegedly rendered, it would become patently obvious that the claims are legally barred and that this filing is nothing but an attempt to harass Allstate.

### 1.    The Counterclaim Fails Basic Pleading Standards

A properly pled claim must provide sufficient factual allegations that, if accepted as true, suffice to raise a right to relief above the speculative level. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A claim does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Twombly, 550 U.S. at 557. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The proposed counterclaim clearly falls short of the standard set by Iqbal and Twombly. The proposed counterclaim does not even state how it arrived at its damages figure of $859,565.67 or who the proposed counterclaim defendants would be. The proposed defendants are identified only by paragraph 3 which states: "Plaintiffs/CounterDefendants, are insurance companies that conducts business in Oakland County, Michigan, and are their insured." See ECF No. 72-1, PageID 1826 (all grammatical errors original). The proposed counterclaim does not identify any defendant by name or attempt to apportion damages between the five distinct entities that are plaintiffs in this action. Id.

The proposed counterclaim is also unclear as to the identity of the counterclaim plaintiff(s). Both Northwest Neurology and Jenkins "state" the counterclaim. *See* ECF No. 72-1, PageID 1826. But only Northwest Neurology attempts to seek any relief. *See* ECF No. 72-1, PageID 1827. With respect to the patients at issue and damages in question, the counterclaim states that "the claim arises out of the non-payment of First Party benefits for reasonable and necessary physical therapy services that were provided to Leonard Warrior." *See* ECF No. 72-1, PageID 1827, ¶ 7. It is utterly unclear what physical therapy services the defendants refer to, as the prior paragraph (and elsewhere in the proposed counterclaim) refers to "Neurological medical services." Id. at ¶ 6. It seems obvious that the defendants do not mean to claim that they provided more than $800,000 worth of physical therapy to one patient, but Allstate and the Court cannot be forced to guess at what they do mean to claim. Further, these incomprehensible allegations speak to the lack of diligence the defendants employed in attempting to present this Court with a colorable motion to amend and further evidence that this pleading is merely a retaliation for Allstate attempting to secure the discovery to which it is entitled to prosecute its case.[3]

---

[3] Indeed, the first mention of any counterclaim to either Allstate or the Court was near the end of the conference with the Court on March 11, 2021 **after** the Court had admonished the defendants for their blatant discovery violations and threatened to sanction them if they did not rectify the same. *See* ECF No. 68, PageID 1582 (in which the Court memorialized its warning of sanctions to the defendants).

## 2.   <u>The Counterclaim Is Time-Barred</u>

Allstate can infer (which it should not be required to do) from Exhibit B to the defendants' motion to amend that the patients listed therein are the intended subjects of the proposed counterclaim, but the proposed counterclaim itself makes no mention of this or any other exhibit.  *See* ECF Nos. 72, PageID 1739-1746 (Exhibit B) and 72-1, PageID 1826-1827.  Exhibit B to the defendants' motion to amend appears to be an accounting report that lists patients' full names (and sometimes their unredacted home telephone numbers) along with the balances allegedly owed by both the patients and their insurers.[4]  *See* ECF No. 72, PageID 1739-1746.  Both the proposed counterclaim and Exhibit B are completely devoid of any dates of service when the charges were incurred.  This appears to be an intentional omission by the defendants, because even a cursory review of the patients listed by Exhibit B to the defendants' motion to amend reveals that the services allegedly performed by Northwest Neurology were done years ago (to the extent they were performed at all).

Michigan law prohibits a claimant from recovering personal injury protection ("PIP") benefits "for any portion of the loss incurred more than one (1) year before

---

[4] Among the many confounding questions raised by the defendants' motion and proposed counterclaim is how patients could personally have balances in relation to the same bills for which the defendants allege that services were performed as a result of motor vehicle accidents.  The Michigan No-Fault Act provides for first-party coverage for motor vehicle accident injuries.  *See* Mich. Comp. Laws § 500.3101, *et seq*.

the date on which the action was commenced." Mich. Comp. Laws § 500.3145(1). Therefore, the defendants may not recover for any allegedly unpaid claims where services were rendered more than a year prior to the date their counterclaim would be docketed.

When the patient names listed on the defendants' Exhibit B are compared to the patients identified by Exhibit 3 to Allstate's Complaint, it is clear that the defendants are attempting to use their proposed counterclaim to seek benefits that are time-barred and have been for years.[5] The first patient listed in Exhibit B (*see* ECF No. 72, PageID 1741) has the initials "N.A.," which corresponds to the N.A. identified by Exhibit 3 to Allstate's Complaint (*see* ECF No. 1-4, PageID 166). N.A. had fifteen (15) alleged dates of service that began over three (3) years ago on January 2, 2018 and the latest of which was nearly two (2) years ago on April 7, 2019. The second patient, F.B., has one purported date of service more than three (3) years ago on February 22, 2018. *See* ECF No. 1-4, PageID 167. The fifth patient

---

[5] Allstate's Complaint uses patient initials rather than full names to protect its insureds' privacy and to comply with its obligations pursuant to the Health Insurance Portability and Accountability Act and Fed. R. Civ. P. 5.1. The defendants have repeatedly exhibited that they have no hesitation with filing their patients' personal information on the docket. *See* ECF No. 54. Allstate continues to maintain that it is improper to use full patient names in public filings, and therefore again refers only to their initials. However, an unredacted copy of Exhibit 3 to Allstate's Complaint was provided to the defendants with Allstate's initial disclosures served on November 10, 2020, and Allstate will provide the Court with an unredacted version of Exhibit 3 upon request.

listed by Exhibit B to the defendants' motion to amend, R.L., had four (4) alleged dates of service, all of which were in 2018.[6]  *See* ECF No. 1-4, PageID 175.  This sampling makes clear that all of the defendants' counterclaim is indisputably time-barred, but this is guess work that neither Allstate nor the Court should have to undertake because the dates of service should be alleged as part of a sufficiently-pleaded claim for recovery.

### 3.  <u>The Counterclaim Fails to Plead Standing</u>

In <u>Covenant Med. Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 895 N.W.2d 490 (Mich. 2017) ("<u>Covenant</u>"), the Michigan Supreme Court analyzed the entire No-Fault Act and unequivocally held that "a review of the plain language of the no-fault act reveals no support for [the proposition] that a healthcare provider possesses a statutory cause of action against a no-fault insurer."  <u>Id.</u> at 504-505.[7]  It appears

---

[6] The third and fourth patient listed on Exhibit B to the defendants' motion to amend are not included on Exhibit 3 to Allstate's Complaint.  Exhibit 3 to Allstate's Complaint is a comprehensive chart documenting every bill submitted to Allstate by Northwest Neurology since January 1, 2018.  *See* ECF No. 1-4.  The fact that these patients from the defendants' motion to amend are not included in this comprehensive chart means either that their purported services were prior to 2018 or that Allstate is not actually the responsible insurer.  Again, because of the inadequacy of the defendants' proposed counterclaim, Allstate and the Court are left to guess which absolute bar to recovery is to blame for this discrepancy, but there can be no doubt that pursuing a claim relative to these patients is necessarily futile.

[7] On June 11, 2019, Mich. Comp. Laws § 500.3112 was amended and now affords a direct cause of action to healthcare providers.  However, pursuant to the enacting section of the amended statute, the amendment only applies to services provided after the effective date of June 11, 2019.  The proactive application of the

that the defendants are attempting to allege a statutory cause of action because (1) they do not identify, describe, or attach a single assignment from their alleged patients, (2) the proposed counterclaim states that it "is a claim for No-Fault Benefits under MCL 500.3101, and MCL 500.3107(1)(a),"[8] and (3) they do not mention any other possible causes of action.  *See* ECF No. 72-1, PageID 1826.

Because the defendants do not have a direct cause of action for No-Fault benefits for a significant portion of the claims for which they seek payment through their proposed counterclaim, they must establish that they have valid assignments of benefits from their patients in order to maintain any action against Allstate for any charge incurred prior to June 11, 2019.  *See* <u>Covenant</u> at 505, n.40.  The defendants' failure to attach or identify even one alleged assignment makes it impossible for Allstate and the Court to evaluate which claims, if any, were actually assigned to the defendants.

---

amendment has also been confirmed by Michigan courts.  *See, e.g.,* <u>Spectrum Health Hospitals v. Farm Bureau Mutual Insurance Company of Michigan, *et al.*</u>, 2020 Mich. App. LEXIS 1243 (Mich. App. Feb. 18, 2020).  As discussed *supra*, much of the proposed counterclaim relates to charges that were incurred in 2019 and before.

[8] Michigan Compiled Laws § 500.3101 contains definitions and the provision requiring individuals to purchase insurance and insurers to offer certain coverages. Michigan Compiled Laws § 500.3107(1)(a) simply lists the categories of allowable expenses under the Act.  Neither of these provisions has anything to do with establishing a cause of action by a provider against an insurer.

The identification of assignments (including the terms thereof) is material to establishing a viable claim. Indeed, "it is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached." Northampton Rest. Group, Inc. v. FirstMerit Bank, N.A., 492 Fed. Appx. 518, 522 (6th Cir. 2012) (internal quotations omitted). Not all assignments are the same or assign the same rights, meaning it is necessary for both the Court and Allstate to see what, if anything, has actually been assigned to the defendants. For example, a patient could have assigned to the defendants the right to seek payment directly against Allstate via the submission of bills to Allstate, but not the right to sue Allstate, as that would interfere with the patient's own potential lawsuit against Allstate. The defendants cannot establish a claim for relief based on hypothetical assignments of benefits for which they do not allege a single actual patient, claim, or assignment term.

Moreover, Northwest Neurology may have already sold its right to collect on the charges alleged (or intended to be alleged) in the counterclaim. As detailed by Allstate's Complaint, a central component of the defendants' scheme was to sell their accounts receivable to third parties for a fraction of the amount billed to Allstate while generating kickbacks to their co-conspirators. *See* ECF No. 1, ¶¶ 72-78, 98-99. Allstate and the Court cannot know the answer to that question because the defendants have failed to plead whether and how they have standing, and they have

failed to coherently respond to discovery requests seeking any agreements for the sale of their accounts receivable.  *See* ECF No. 60.  These are facially obvious deficiencies with the defendants' proposed counterclaim that make the pleading futile and establish that nothing but an unnecessary waste of time and resources will ensue if it is permitted to be filed.

### 4.  <u>The Counterclaim Is Duplicative</u>

The defendants' motion to amend threatens that if leave is not granted, they will be forced to file a separate lawsuit in state court.  The defendants did not bother, however, to determine whether they actually *have* already filed separate claims in state court.  In fact, the defendants have already filed lawsuits seeking the exact same benefits they apparently seek through their proposed counterclaim.  By way of example, Northwest Neurology, P.C. sued Allstate in the 44th District of Michigan State Court, on July 9, 2020, for charges incurred treating Joseph Arnold, who is listed in Exhibit B to the defendants' motion to amend.  *See* ECF No. 72, PageID 1741 and Exhibit A attached hereto.  Notably, the amount sought relative to Arnold reflected on Exhibit B to the defendants' motion to amend - $23,100 – is the exact same amount sought by Northwest Neurology's state court action.  *See* Exhibit A.

When "a plaintiff files a second complaint alleging the same cause of action as a prior, <u>pending</u>, related action, the second action may be dismissed."  <u>Holden v. Cty. of Saginaw</u>, 2005 U.S. Dist. LEXIS 62713, *4 (E.D. Mich. June 30, 2005),

quoting <u>Oliney v. Gardner</u>, 771 F.2d 856, 859 (5th Cir. 1985) (emphasis original). The defendants' proposed counterclaim will be the second action as to claims that the defendants are already pursuing in state court. It would be unjust to allow the defendants to harass Allstate by making it defend against the exact same bills at the same time in multiple forums. Accordingly, the defendants' motion for leave to file their proposed counterclaim must be denied.

## III.   <u>CONCLUSION</u>

The defendants have failed to show good cause why they could not have filed their proposed counterclaim with their original answer or at any time prior to the agreed-upon February 18, 2021 deadline. They had four (4) months between the time they answered the complaint and the expiration of the stipulated deadline to determine that they wanted to assert a counterclaim, but failed to do so. They offered no excuse for that neglect other than that they did not know what was in Allstate's Complaint. That explanation would not constitute good cause if true, and the defendants' answer to Allstate's Complaint filed in October 2020 reveals that this excuse is a fabrication and the defendants were always aware of the specific relief sought by Allstate. A late-filed counterclaim would prejudice Allstate, and compound the prejudice already sustained by Allstate as a result of the defendants' refusal to meaningfully participate in discovery. Indeed, the defendants have not even responded to discovery served by Allstate six (6) months ago (on November

10, 2020) and face sanctions related to the same (*see* ECF No. 68, PageID 1582), which calls into serious question their ability to litigate a counterclaim when they cannot handle the claims already at issue. Finally, the proposed counterclaim is wholly deficient and fails to plead a claim upon which relief could be granted. Allowing the defendants to file it would, therefore, be futile.

Respectfully Submitted,

*/s/ Jacquelyn A. McEttrick*

_____
Richard D. King, Jr.
rking@smithbrink.com
Nathan A. Tilden (P76969)
ntilden@smithbrink.com
Jacquelyn A. McEttrick
jmcettrick@smithbrink.com
Andrew H. DeNinno
adeninno@smithbrink.com
William G. Potter
wpotter@smithbrink.com
38777 Six Mile Road, Suite 314
Livonia, MI 48152
(734) 521-9000

350 Granite Street, Suite 2204
Braintree, MA 02184
(617) 770-2214

Dated: April 2, 2021                    *Attorneys for Plaintiffs*

18

## <u>CERTIFICATE OF SERVICE</u>

I, Jacquelyn A. McEttrick, counsel for Plaintiffs, hereby certify that on April

2, 2021, I electronically filed the foregoing papers with the Clerk of the Court using

the ECF system, which will send notification of such filing to all counsel of record.

SMITH & BRINK

*/s/ Jacquelyn A. McEttrick*
_____

Jacquelyn A. McEttrick
jmcettrick@smithbrink.com
38777 Six Mile Road, Suite 314
Livonia, MI 48152
(734) 521-9000

350 Granite Street, Suite 2204
Braintree, MA 02184
(617) 770-2214