UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ALLSTATE INSURANCE COMPANY;
ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY; ALLSTATE
PROPERTY AND CASUALTY
INSURANCE COMPANY; ESURANCE
INSURANCE COMPANY; and
ESURANCE PROPERTY AND
CASUALTY INSURANCE COMPANY,

                Plaintiffs,

v.

SURGICAL CENTER OF SOUTHFIELD,
LLC; NORTHWEST NEUROLOGY, P.C.;
PERFORMANCE ORTHOPEDICS OF
MICHIGAN PLLC; TESSY JENKINS,
M.D.; and ROBERT SWIFT, D.O.,

                Defendants.

C.A. No. 20-cv-12008-TGB-EAS

## PLAINTIFFS' RENEWED MOTION FOR SANCTIONS, INCLUDING DEFAULT JUDGMENT, AGAINST DEFENDANTS NORTHWEST NEUROLOGY, P.C. AND TESSY JENKINS, M.D.

Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Property and Casualty Insurance Company, Esurance Insurance Company, and Esurance Property and Casualty Insurance Company (collectively, "Allstate") hereby move this Honorable Court to issue an order imposing sanctions against defendants Northwest Neurology, P.C. ("Northwest Neurology") and Tessy

Jenkins, M.D. ("Jenkins") (collectively, the "defendants"), including the sanction of default judgment, and for an award of costs and attorney's fees incurred by Allstate in bringing this motion and its earlier motion to compel and for sanctions (*ECF No. 60*).

Allstate and the Court have taken every reasonable step over nearly seven (7) months to obtain basic good faith participation in discovery by the defendants, to no avail.  The defendants have not taken any steps to remedy their clear deficiencies even as the Court has repeatedly warned of sanctions and default judgment.  It is not possible to prepare a case for trial, particularly one of this magnitude and complexity, when the defendants utterly ignore their discovery obligations.  Allstate has been deprived of more than half of the discovery period already due to the defendants' misconduct, and there is no end in sight.  Allstate respectfully submits that the only appropriate remedy now is default judgment

Allstate files this motion pursuant to the Court's instruction during the May 14, 2021 hearing concerning the defendants' failure to participate in discovery that if the defendants were unable to cure their deficiencies within one week, Allstate should file a motion to "clarify what's been produced, what was called for, what has not been produced" so that the Court can "determine what the appropriate sanction should be" up to and including "a default judgment against a party that is not participating in discovery." *See* ECF No. 82, PageID 2010-2011.  The undersigned

2

certifies that Allstate has repeatedly conferred with counsel for the defendants regarding the discovery deficiencies at issue in accordance with Local Rule 7.1(a), including extensive correspondence and a conference after the hearing with the Court on May 14, 2021, but Allstate has not received any further documents since that hearing.

WHEREFORE, for the reasons set out herein and detailed in the attached brief in support of this renewed motion for sanctions, including default judgment, Allstate respectfully requests that this Honorable Court enter default judgment against Northwest Neurology, P.C. and Tessy Jenkins, M.D. and award Allstate its costs, including attorney's fees, incurred in relation to filing this motion and its earlier motion to compel and for sanctions (*ECF No. 60*).

[SIGNATURE PAGE FOLLOWS]

Respectfully submitted,

SMITH & BRINK,

*/s/ Andrew H. DeNinno*

_____

Richard D. King, Jr.
rking@smithbrink.com
Nathan A. Tilden (P76969)
ntilden@smithbrink.com
Jacquelyn A. McEttrick
jmcettrick@smithbrink.com
Andrew H. DeNinno
adeninno@smithbrink.com
William G. Potter
wpotter@smithbrink.com
38777 Six Mile Road, Suite 314
Livonia, MI 48152
(734) 521-9000

350 Granite Street, Suite 2204
Braintree, MA 02184
(617) 770-2214

Dated:  May 27, 2021                    *Attorneys for Plaintiffs*

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| ALLSTATE INSURANCE COMPANY; ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY; ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY; ESURANCE INSURANCE COMPANY; and ESURANCE PROPERTY AND CASUALTY INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> SURGICAL CENTER OF SOUTHFIELD, LLC; NORTHWEST NEUROLOGY, P.C.; PERFORMANCE ORTHOPEDICS OF MICHIGAN PLLC; TESSY JENKINS, M.D.; and ROBERT SWIFT, D.O., <br><br> Defendants. | C.A. No. 20-cv-12008-TGB-EAS |

---

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR RENEWED MOTION FOR SANCTIONS, INCLUDING DEFAULT JUDGMENT, AGAINST DEFENDANTS NORTHWEST NEUROLOGY, P.C. AND TESSY JENKINS, M.D.**

---

## **TABLE OF CONTENTS**

Table of Contents ............................................................................................. i

Issues Presented ............................................................................................. ii

Controlling Authorities ................................................................................. iii

Brief in Support of Plaintiffs' Renewed Motion for Sanctions, Including Default
Judgment, Against Northwest Neurology, P.C. and Tessy Jenkins, M.D. ............... 1

I.      Introduction .............................................................................. 1

II.     Relevant Background ................................................................. 4

III.    Documents the Defendants Still Have Not Produced .............................. 7

        A. Patient Files ..................................................................... 7

        B. Communications ............................................................... 10

        C. Personnel Records.............................................................. 15

        D. Financial, Accounting, and Bank Records...................................... 15

        E. Medical Equipment.... ......................................................... 17

IV.     The Defendants' Conduct Has Caused Incurable Prejudice ................... 19

V.      Conclusion ............................................................................... 24

## <u>ISSUES PRESENTED</u>

1. Whether sanctions, including default judgment, should be imposed against defendants Northwest Neurology, P.C. and Tessy Jenkins, M.D. for their failure to participate in discovery for a period of almost seven (7) months and for their failure to comply with this Court's Orders?

   Allstate answers:  Yes

# CONTROLLING AUTHORITIES

## STATUTES

Mich. Comp. Laws § 500.3101, *et seq*.

## CASES

Allstate Insurance Company, et al. v. Summit Physicians Group, et al., 16-cv-13657-BAF-DRG, Docket No. 220 (E.D. Mich. Dec. 3, 2018)

Annabel v. Erichsen, 2019 U.S. Dist. LEXIS 68626 (E.D. Mich. March 15, 2019)

Bank One of Cleveland, N.A. v. Abbe, 916 F.2d 1067 (6th Cir. 1990)

Berry v. Ocwen Loan Servicing, 2020 U.S. Dist. LEXIS 40353 (W.D. Tenn. Mar. 9, 2020)

Grange Mut. Gas. Co. v. Mack, 270 Fed. Appx. 372 (6th Cir. 2008)

Laues-Gholston v. Mercedes-Benz Fin. Servs. USA, LLC, 2014 U.S. Dist. LEXIS 184021 (E.D. Mich. Nov. 28, 2014)

State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C., 315 F.R.D. 220 (E.D. Mich. 2016)

Stooksbury v. Ross, 528 Fed. Appx. 547 (6th Cir. 2013)

United States v. Reves, 307 F.3d 451 (6th Cir. 2002)

## RULES

Fed. R. Civ. P. 37

Plaintiffs Allstate Insurance Company and its affiliates (collectively, "Allstate") hereby submit the within brief in support of their renewed motion for sanctions, including default judgment, against defendants Northwest Neurology, P.C. ("Northwest Neurology") and Tessy Jenkins, M.D. ("Jenkins") (collectively, the "defendants"). This motion is submitted pursuant to the Court's instruction during the May 14, 2021 hearing concerning the defendants' failure to participate in discovery that if the defendants were unable to cure their deficiencies within one week, Allstate should file a motion to "clarify what's been produced, what was called for, what has not been produced" so that the Court can "determine what the appropriate sanction should be" up to and including "a default judgment against a party that is not participating in discovery." *See* ECF No. 82, PageID 2010-2011.

## I.   <u>INTRODUCTION</u>

Since November 10, 2020, when Allstate served its discovery requests on the defendants, Allstate has been trying to obtain from the defendants basic and essential documents that Allstate needs to conduct further discovery and prepare for trial. This Court has repeatedly warned the defendants that their failure to participate in discovery will have serious consequences, including an express warning that default judgment may be entered against them during the hearing conducted on May 14, 2021. *See* ECF No. 82. *See also* ECF No. 68. On May 17, 2021, Allstate sent Northwest Neurology and Jenkins a detailed letter setting forth the significant

1

discovery deficiencies that still have not been addressed. *See* Exhibit A. Allstate then convened yet another conference with counsel for Northwest Neurology and Jenkins on May 19, 2021, during which the defendants admitted that they possess extensive responsive materials that have not been produced, but offered only further excuses for their non-participation in discovery and made no commitment to producing the missing documents.[1] *See* Exhibits B and C, ¶ 23. Despite the clear admonishment and warning by the Court, and despite Allstate's continued good faith efforts to obtain compliance with its basic discovery requests, the defendants have not served a single updated response or new document since the May 14, 2021 hearing. The defendants have exhibited no indication that they will begin to take discovery seriously, and Allstate continues to be prejudiced by its inability to obtain even the most basic information relevant to this complex healthcare fraud case.

This action, as relevant to these defendants, involves allegations of fraudulent charges for esoteric and medically unnecessary neurological tests, including tests done in coordination with former co-defendant and current RICO enterprise ISpine,

---

[1] Prior to this statement, Northwest Neurology and Jenkins's position has consistently been that they have substantially complied with Allstate's discovery requests, including reporting to the Court on May 14, 2021 that "[w]e did comply with almost all the requirements, all the documents that are required." *See* ECF No. 82, PageID 2002. As detailed by the affidavit attached hereto at Exhibit C, the defendants' production to date has consisted of almost nothing. Adding extensive new materials to this production cannot be squared with the prior representations of substantial compliance. And, of course, the production of these purported new materials remains purely hypothetical as Allstate has not received a single document.

PLLC ("ISpine").  *See* ECF No. 1, ¶¶ 216-283.  The basic materials that the defendants have refused to produce for nearly seven (7) months include patient files and records to show what tests were performed, why they were performed, who performed them, and at what cost to the defendants.  Allstate's Complaint at Exhibit 3 identifies 64 specific patients for whom the defendants submitted charges to Allstate, including the exact dates and purported services billed relative to each patient.  *See* ECF No. 1-4.  There can be no question that the defendants know exactly what records need to be produced and have simply chosen not to do so.

Other obviously relevant and essential documents that the defendants have intentionally withheld and refused to produce include the defendants' financial records and their communications with co-conspirators, agents, and other providers.  *See* Exhibit C, ¶ 12.  The defendants have not produced a single communication, despite ample evidence developed by Allstate through subpoenas that the defendants regularly communicate by email and store such communications.  Id. at ¶¶ 16, 19, 21-22, and Exhibit D.  Indeed, Northwest Neurology and Jenkins continue to deny having had email communications with categories of people, including co-defendants, billers, and software providers, but Allstate has obtained irrefutable evidence of such emails through subpoenas to the defendants' email service providers.  Id.

The only possible conclusion at this point, nearly seven (7) months after Allstate served its discovery requests, is that the defendants are deliberately concealing evidence sought by Allstate in contravention of the Court's Orders. The Court could not have been clearer that this is unacceptable:

```
 8          Now, even after the Court ordered your client to
 9   produce materials, your client has failed to do so, you have
10   failed to do so.  That is sanctionable conduct.  I told you
11   that you would be sanctioned if you did not comply with the
12   Court's order.  You have not done so.
```

*See* ECF No. 82, PageID 2007.  Allstate has suffered irreparable prejudice because it has not been able to obtain the basic evidence to which it is entitled to prepare for trial, including giving its experts the time to review such evidence.  The appropriate sanction in response to a party that is refractory to repeated efforts and warnings to gain compliance with Court Orders and basic Rules of Procedure is entry of default judgment.

## II.   **RELEVANT BACKGROUND**

Allstate served discovery requests on Northwest Neurology and Jenkins on November 10, 2020.  *See* ECF No 60.  The defendants bargained for and received an extension of time to the end of December to respond to those requests and agreed to produce "all documents responsive to Allstate's discovery requests" at that time. *See* ECF No. 54.  As part of the agreement between the parties, the new deadline was entered as a Court Order.  Id.  Northwest Neurology and Jenkins violated that

4

Order, and failed to produce even a single document by the end of December, or any written responses or objections to Allstate's document requests. They also served severely deficient interrogatory answers that did not make any serious effort to disclose the information requested by Allstate and to which Allstate is clearly entitled. *See* ECF No. 60.

After making several good faith efforts over the following month to get the defendants to respond to discovery in a meaningful way, Allstate filed a motion to compel on January 26, 2021. *See* ECF No. 60. In response to that motion, the defendants filed a weeks-late and non-responsive opposition in which they attempted to avoid discovery entirely because they dispute the factual allegations made by Allstate in its Complaint. *See* ECF No. 63. The defendants attached to that opposition an affidavit by Jenkins in which she averred that she and Northwest Neurology had no business or personal relationships with any of the other defendants in the case. *See* ECF No. 63, PageID 1401-1404. The assertion that Jenkins and Northwest Neurology have no business relationship with entities like ISpine, with which they had a clear arrangement to bill for intraoperative neuromonitoring ("IONM") described in detail by Allstate's Complaint, is plainly false. *See* ECF No. 1, ¶¶ 216-261. Moreover, the affidavit revealed the defendants' contempt for the discovery process. After ignoring a court-ordered deadline to produce documents and then failing (without explanation or contrition) to timely respond to a motion to

compel, the defendants' position is that because they dispute Allstate's allegations, they should not have to respond to discovery.

The defendants also attached to their opposition to Allstate's motion to compel their first document production (two months late), which consisted of 117 pages of barely responsive documents.  *See* ECF No. 63.  There were no patient files, no medical records, no emails or text messages, and no contracts or financial records produced.  <u>Id</u>.  The majority of the production was copies of Allstate's own Explanation of Benefits forms that it had sent to Northwest Neurology.  <u>Id</u>.

In response to Allstate's motion to compel, the Court made it abundantly clear that it expected the defendants to take the discovery process seriously and respond to Allstate's requests in full.  The Court issued its first warning that failure by the defendants to do so "will result in sanctions" and allowed the defendants a generous extension of time to respond until April 30, 2021.  *See* ECF No. 68.  The Court also ordered that any objections to Allstate's requests needed to be raised with the Court by April 20, 2021.  <u>Id</u>.  Despite the Court's clear instructions and warnings, the defendants submitted no objections to the Court and produced another woefully deficient batch of documents that still contained no emails or text messages, severely incomplete patient files, and almost nothing pertaining to the defendants' financial and accounting records or relevant contracts.  *See* Exhibit C, at ¶¶ 8-12.

## III.   DOCUMENTS THE DEFENDANTS STILL HAVE NOT PRODUCED

### A.   PATIENT FILES

It cannot be reasonably disputed that the medical records and invoices related to the charges billed by the defendants to Allstate are essential documents in this case.  These are basic records that Northwest Neurology is required by law to have and maintain, and which recount what tests and treatments patients received, why they were done, when, by whom, and at what cost.  Without them, Allstate cannot even begin the work of thoroughly evaluating the defendants' conduct, including providing such records to its experts for review.

Northwest Neurology and Jenkins have a lengthy history of abusing the Michigan No-Fault Act, Mich. Comp. Laws § 500.3101, *et seq*., by targeting purported car accident victims and inducing them to undergo esoteric and unnecessary neurologic tests.  Nearly every patient allegedly seen by Jenkins was subjected to one or more expensive diagnostic tests, regardless of the severity of the claimed accident or the patient's alleged injuries.  *See* ECF No. 1, ¶¶ 263-283.  These tests necessarily resulted in records that have not been produced to Allstate.  For example, among the tests billed by Northwest Neurology and Jenkins (at rates charged in tens of thousands of dollars) were ambulatory electroencephalograms ("EEGs"), which are only properly used to diagnose seizures and epilepsy.  *See* ECF No. 1, ¶¶ 263-271.  These EEGs required patients to wear headgear sometimes for

days at a time, and necessarily would have resulted in extensive records if the tests were actually performed.  Id.  Northwest Neurology and Jenkins billed even more for alleged "spike analysis" of the EEG results (despite the fact that there were no spikes to analyze because the patients predictably did not have seizures), which confirms that a record of the results was created.  *See* ECF No. 1, ¶¶ 272-274. Allstate has been attempting to obtain records from Northwest Neurology and Jenkins documenting these (and other) unlikely purported procedures since the start of discovery, and has been provided with almost nothing.  *See* Exhibit C.

In 2019, Jenkins began partnering with former co-defendant Stefan Pribil, M.D. ("Pribil") and current RICO enterprise ISpine to bill for alleged IONM in conjunction with ISpine's medically unnecessary surgeries.  IONM is sometimes properly used during complex spinal surgery or on patients with dangerous comorbidities as an early warning system that the surgery might be causing nerve damage.  Id. at ¶ 218.  For the relatively minor and unnecessary procedures that Pribil and ISpine claimed to perform, IONM was a completely unnecessary extravagance added solely to increase the bill.  Id. at ¶¶ 219, 259-260.  As with the improbable neurologic testing billed by Northwest Neurology and Jenkins, Allstate has been attempting to obtain the actual records of the purported IONM that was billed by Northwest Neurology and Jenkins, but has been unable as a result of their discovery misconduct.

8

It is almost inconceivable that a defendant accused of fraud would not quickly produce the documentation showing that dozens of patients with (at most) minor injuries really did need extensive neurological testing.  After more than half a year of discovery, however, the defendants have been unable or unwilling to do so. Allstate could not make it any easier for the defendants to identify and produce the medical records at issue.  Not only are they essential business records of any medical practice, Exhibit 3 to Allstate's Complaint, filed last July and entitled "Chart of Northwest Neurology Patients and Treatment at Issue," identifies the 64 specific patients for whom Northwest Neurology billed Allstate during the relevant period. *See* ECF No. 1-4.  Exhibit 3 also lists each patient's initials, claim numbers, dates of service, the specific code and service description used by Northwest Neurology to bill Allstate, and the precise amount billed.  Id.  It should be exceedingly obvious to the defendants what patient files they need to produce, and because every entry in Exhibit 3 documents a charge to Allstate, records of the tests, treatments, diagnoses, and visits that gave rise to those charges must exist.

Yet, out of these 64 patients, the defendants have failed to produce any records at all for twenty-two (22) of them, and have produced obviously incomplete records for another thirty (30).  *See* Exhibit C, ¶¶ 9-11.  Records that are "obviously incomplete" are those that omit basic information that must necessarily be part of a patient file, such as the results of the tests for which the defendants billed Allstate.

9

<u>Id</u>. at ¶ 11.  Even those records that are not "obviously incomplete" are likely incomplete.  Allstate's requests for production encompass documents such as correspondence related to the patients at issue.  *See* ECF 63, PageID 1433-1434.  As discussed in more detail below, the defendants have completely failed to produce any communications at all.  For that reason, even the twelve (12) patient files eventually produced by the defendants that are not "obviously incomplete" may well be missing important evidence.

### B. <u>COMMUNICATIONS</u>

Perhaps even more egregious than the defendants' failure to produce their patient files is their complete refusal to produce any communications or electronically stored information ("ESI") *<u>at all</u>*.  Allstate has emphatically and repeatedly demanded that the defendants correct this deficiency, including at both hearings with the Court on its motion to compel.  *See, e.g.*, ECF No. 65, PageID 1573-1574; ECF No. 82, PageID 1998-1999.  Not only have the defendants failed to produce any communications, they have falsely asserted that they have none.  For example, in response to a request for communications with other defendants such as ISpine, Northwest Neurology[2] replied "None.  Communications were done by phone

---

[2] Jenkins has never served a response to Allstate's requests for production of documents, even though the requests served on her differ from those served on Northwest Neurology.  *See* Exhibit C, ¶ 13.

whenever my services were needed." *See* ECF No. 63, PageID 1435. Allstate

obtained evidence via subpoenas to the defendants' email service providers that

Northwest Neurology and Jenkins in fact had numerous email communications with

defendant ISpine.[3] *See* Exhibit D.[4] By way of example, Oath Holdings, Inc. (f/k/a

Yahoo!) produced a record of an email involving Northwest Neurology, ISpine,

Pribil, and defendant Wesley Blake Barber ("Barber") sent on August 30, 2019:

```
From:     office.ispine <office.ispine@gmail.com>
Sent:     8/30/2019 12:14:15 PM
To:       Blake.ispine@gmail.com; sgpribil@hotmail.com; admin@clinicofcolumbia.com; checkin@clinicofcolumbia.com;
          andreas.fausch@gmail.com; nwneurology215@yahoo.com
Subject:
```

*See* Exhibit D. This same document production also included irrefutable evidence

of emails by Jenkins using a personal account to Barber:

```
From:     drjenk <drjenk@yahoo.com>
Sent:     5/22/2019 11:34:25 PM
To:       blake.ispine@gmail.com
Subject:
```

---

[3] The Stored Communications Act, 18 U.S.C. § 2701, *et seq*., prevents Allstate from obtaining the content of these communications from the email service providers. The only information available to Allstate without the defendants' participation in discovery is the metadata, which lists the date and time of email correspondence and the accounts involved in each communication.

[4] Exhibit D is a chart that contains 165 examples of email correspondence involving Northwest Neurology and/or Jenkins that is necessarily responsive to Allstate's discovery requests by virtue of the other participants in the communication. This exhibit lists merely a small fraction of the emails for which Allstate possesses proof of existence. Because Northwest Neurology and Jenkins did not produce a single communication, Allstate has not endeavored to list every communication here. However, these records are available and Allstate will produce a complete accounting of missing correspondence if so requested by the Court.

Id.  There can be no doubt that this email correspondence is responsive to Allstate's discovery requests (which seeks communications with co-defendants), but not only have the defendants failed to produce it, they have falsely denied its existence.  In response to a request for communications with billing agencies, Northwest Neurology replied "None.  The billing was internal."  *See* ECF No. 63, PageID 1435.  The defendants repeated this false assertion: "With regards to billings; the billings for the services rendered were done internally."  *See* ECF No. 63, PageID 1394.  This is not even consistent with Northwest Neurology's own interrogatory answers, much less the extensive records Allstate has now obtained from third parties confirming that hundreds of responsive communications exist.  *See* ECF No. 63, Page ID 1414; Exhibits D and E.  One of Northwest Neurology's external billers, Miller Medical Billing LLC, produced 285 pages of emails with Northwest Neurology.  *See* Exhibit C, ¶ 15.  Another external biller, H&S Billing Company, produced text message communications between it and Northwest Neurology employee Cicely Fisher.  *See* Exhibit E.  The defendants' email records also reveal scores of communications with a third external biller, Edwards Medical Billing LLC.[5]  *See* Exhibit D.

---

[5] Edwards Medical Billing LLC is one of the subjects of Allstate's pending motion for an order to appear and show cause.  *See* ECF No. 70-1.  Shortly after Allstate filed that motion, an owner of Edwards Medical Billing LLC called the undersigned counsel and revealed that it was in possession of extensive communications with the defendants.  *See* Exhibit C, ¶ 19.  Edwards Medical Billing LLC has not contacted Allstate again and has not filed any response to Allstate's motion.  Id.

Northwest Neurology also claimed to have no communications with any software provider.  *See* ECF No. 63, Page ID 1437.  But Allstate has obtained evidence that Northwest Neurology had routine email communications with Practice Fusion, a provider of electronic medical records software and cloud storage.  *See* Exhibit D.  Indeed, Practice Fusion produced a log of communications with Northwest Neurology, many of which were emails.  *See* Exhibit F.

The above examples of misrepresentations by the defendants and irrefutable evidence that responsive communications exist are provided merely as examples. Allstate has this evidence only because it was able to identify and subpoena some third parties who were not willing to conceal documents from discovery.  Allstate cannot reasonably be expected to identify all of the defendants' communications through third parties and is under no obligation to do so as the defendants are required to produce these materials themselves.  Moreover, a number of third parties from whom Allstate has attempted to obtain documents have ignored Allstate's subpoenas, including the defendants' accountant.  *See* ECF No. 70.  It appears that some or all of these non-responses are due to the defendants' interference and misconduct.  For example, on February 22, 2021, counsel for Allstate received a voicemail from one of the defendants' external billing agents – Kevin Miller of Miller Medical Billing LLC – stating that Jenkins and her attorney told him that he did not have permission to release materials in response to Allstate's subpoena.  *See*

13

Exhibit C, ¶ 16.[6]  As the defendants are interfering with third-party discovery while simultaneously refusing to participate in discovery themselves, there can be no appropriate sanction short of default judgment.

The following are the categories of communications sought by Allstate's requests for production of documents, in response to which the defendants have produced nothing at all:

a. Communications with any of the other defendants in this case (including former defendants) (*see* ECF No 63, PageID 1435);

b. Communications with entities that provided funding or factoring related to Northwest Neurology's accounts receivable (*see* ECF No 63, PageID 1432);

c. Communications with any billing agency or biller that Northwest Neurology used, including but not limited to Miller Medical Billing and Edwards Medical Billing (*see* ECF No 63, PageID 1435);

d. Communications with individuals or entities that provided software used by Northwest Neurology (*see* ECF No 63, PageID 1437);

e. Communications relating to the creation or development of recurring order or requisition forms used by Northwest Neurology (*see* ECF No 63, PageID 1433);

f. Communications about how Northwest Neurology chose its billing rates (*see* ECF No 63, PageID 1434);

g. Communications wherein the treatment of an Allstate insured is discussed (*see* ECF No 63, PageID 1434);

h. Communications with any attorney for an Allstate insured that discuss either the legal representation of the insured or the medical treatment of the insured (*see* ECF No 63, PageID 1435);

i. Communications discussing the collection of bills or money owed to Northwest Neurology (*see* ECF No 63, PageID 1436);

j. Communications between Jenkins and the Michigan Board of Medicine (*see* ECF No 60-8, PageID 1364); and

---

[6] Allstate has also retained an audio recording of the voicemail disclosing the defendants' interference with its subpoena, and will produce the same to the Court upon request.

k.   Communications where Jenkins discusses either the collection of money owed on insurance claims, the referral of patients, the identification of car accident victims, or transportation services (*see* ECF No 60-8, PageID 1365).

## C.   PERSONNEL RECORDS

The defendants have also failed to produce their personnel records or any materials related to their employees and contractors. Although they have not denied having employees, Northwest Neurology has objected to producing these records on the basis that they are irrelevant. *See* ECF No 63, PageID 1431. The defendants did not, however, renew and submit that objection to the Court as required by the Court's Order on Allstate's motion to compel. *See* ECF No. 68 and ECF No. 82, PageID 2001. Clearly, information regarding the defendants' employees and contractors is discoverable information. These are the people who are in a position to tell Allstate how the defendants conducted their business, obtained and treated patients, generated charges to Allstate, and whether the documents that defendants say do not exist do in fact exist. Allstate has a right to depose these witnesses as well as learn about the qualifications, or lack thereof, of any employees and contractors that had a hand in the purported treatment and testing at issue in this action.

## D.   FINANCIAL, ACCOUNTING, AND BANK RECORDS

Allstate requested the defendants' financial records, including their accounting and banking documents, balance sheets, profit and loss statements, income statements, annual budgets, tax records, documents that support reports of

income and deductions claimed in tax filings, along with the communications related to the same.  *See* ECF No 60-8, PageID 1362-1365; ECF No 63, PageID 1435-1437. In response, the defendants produced only some of their tax returns for the years at issue and a single credit card statement in the name of Jenkins and Northwest Neurology.  *See* Exhibit C, ¶ 6.

It simply implausible that the defendants have no financial records other than incomplete tax returns and a single credit card statement. The defendants have an accounting firm (*see* ECF No. 63, PageID 1418) but have not produced any records from their accountant.  *See* Exhibit C, ¶ 12.  The defendants admit to having bank accounts (*see* ECF No. 63, PageID 1418) but have produced no records pertaining to them.  *See* Exhibit C, ¶ 12.  This Court has expressly ruled that the defendants must produce these documents:

```
15   materials that were also responsible -- responsive.  For
16   example, financial records.  It's -- it's not plausible that
17   your client doesn't have financial records for her clinic.
18   It's not plausible that she doesn't have bank records if they
19   were called for.  And you cannot simply fail to produce
20   material during the discovery process, which is what you've
21   done here.
```

ECF No 82, PageID 2007.  It is well-established in this District that bank and financial records are relevant and discoverable in cases such as this.  *See, e.g.,* <u>State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.</u>, 315 F.R.D. 220, 223 (E.D. Mich. 2016) (financial records "potentially will illuminate the way

16

the scheme operates; the extent of the scheme, including but not limited to the number of patients wrongfully treated and the amount of damages; and other entities involved in the scheme").

The defendants have also asserted that they do not spend money on marketing to potential patients or car accident victims and that they do not sell their accounts receivable to third parties, but Allstate has no way of evaluating those claims as the defendants have withheld nearly all of their financial information.  UCC filings document that if Northwest Neurology has not sold its accounts receivable, it has at least taken loans against them.  There are at least four (4) entities that have active liens on Northwest Neurology's property: Hantz Bank (claims a lien on all assets) (*see* Exhibit G), U.S. Small Business Administration (all assets) (*see* Exhibit H), Cardinal Health 108 LLC (all assets) (*see* Exhibit I), and TIAA Commercial Finance Inc. (all equipment) (*see* Exhibit J).  The defendants' failure to participate in discovery has prevented Allstate from looking into even basic circumstances that are highly relevant to its Complaint allegations.

### E.   MEDICAL EQUIPMENT

Another essential category of documents that remains woefully deficient are those showing what medical equipment the defendants possess and purportedly used to generate bills to Allstate.  As noted above, the defendants billed Allstate many thousands of dollars for alleged neurologic tests that require sophisticated

equipment.  For the past six months, Allstate has been trying to find out what medical devices were actually used in association with these purported tests, including whether the defendants actually possess the equipment, whether they were able to properly operate any equipment they did have, whether the equipment was properly serviced and maintained, and what costs were associated with the equipment that could possibly support the exorbitant amounts billed to Allstate.

Allstate cannot answer any of these questions because the defendants have produced no documentation identifying equipment they possessed during the relevant period.  In their answers to Allstate's interrogatories, the defendants claim to have a "Cadwell Cascade Pro with 16 channel amplifier ($41,483.63)," but have not produced any records pertaining to its purchase, use, or maintenance.  *See* ECF No. 63, PageID 1415-1416.   The defendants also claim to have a "Natus VikingQuest 4 channel amplifier ($20,000)" (id.), but produced no documents related to this device.  The UCC filing by TIAA Commercial Finance Inc. claims to have a lien on a piece of equipment owned by Northwest Neurology identified as a "TREX HD video ambulatory system and external battery pack kit."  *See* Exhibit J. The defendants did not disclose that they own such a device and did not produce any documents related to it.  Allstate is prejudiced in preparing for trial as it has no access to even the most basic discovery about the hundreds of thousands of dollars of charges that are at issue in this action.

18

## IV. THE DEFENDANTS' CONDUCT HAS CAUSED INCURABLE PREJUDICE

Allstate served discovery requests on the defendants on November 10, 2020. *See* ECF No 54, PageID 1258.  It has now been more than six months since that date and half of the discovery period has elapsed.  Despite repeated attempts by Allstate to get the defendants to participate in discovery, and multiple clear warnings from the Court, the defendants have refused to comply.  Given the defendants' repeated and intentional violations of this Court's Orders, this Court should impose strong sanctions, including the entry of default judgment, against the defendants.  This result has already been contemplated by the Court, which issued a stern warning to the defendants:

> 7          But this is unacceptable, and consequently, Mr.
> 8   Ukpabi, you are going to have to pay the consequences of this
> 9   failure and your client will have to pay that consequence.
> 10   Under Rule 37, it's actually an appropriate penalty or an
> 11   appropriate sanction under -- under some circumstances to enter
> 12   a default judgment against a party that fails to comply with
> 13   discovery here, and I'm warning you now that I may decide to
> 14   enter a default judgment against you because of this conduct
> 15   here.
> 16          You cannot participate in the litigation process
> 17   without providing discovery and then expect to just see what
> 18   happens.  I can tell you what's going to happen.  What happens
> 19   is that sanctions will be imposed on people that fail to
> 20   participate in discovery.  That is what you are doing, that is
> 21   what your client is doing.

*See* ECF No. 82, PageID 2008.

"Among the variety of discovery sanctions available in a district court's 'arsenal,' the entry of a default judgment against a defendant or an Order of dismissal against a plaintiff are the court's 'strongest weapon[s].'" <u>Annabel v. Erichsen</u>, 2019 U.S. Dist. LEXIS 68626, *2 (E.D. Mich. March 15, 2019), quoting <u>Grange Mut. Gas. Co. v. Mack</u>, 270 Fed. Appx. 372, 376 (6th Cir. 2008).  "[T]he district court does not abuse its discretion in entering a default judgment where a 'party has the ability to comply with a discovery Order and does not.'"  <u>Id</u>. at *4, quoting <u>Stooksbury v. Ross</u>, 528 Fed. Appx. 547, 552 (6th Cir. 2013).

"A court must consider four factors when determining whether a plaintiff's complaint should be dismissed pursuant to Rule 37: (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the party's adversary was prejudiced by the party's failure to cooperate in discovery; (3) whether the party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered."  <u>Id</u>., citing <u>Bank One of Cleveland, N.A. v. Abbe</u>, 916 F.2d 1067, 1073 (6th Cir. 1990).  "Although no one factor is dispositive, dismissal or default judgment is proper if the record demonstrates delay or contumacious conduct."  <u>Id</u>., citing <u>United States v. Reves</u>, 307 F.3d 451, 458 (6th Cir. 2002).

The facts discussed above call for entry of default judgment.  The defendants' repeated disregard of the Court's Orders demonstrate that their actions are willful,

intentional, and done in bad faith.  The defendants' complete failure to produce any documents by the Court-Ordered deadline in December was their first willful disregard of both the Court and their discovery obligations.  Next, the defendants disregarded the Court's clear instructions in response to Allstate's motion to compel, and squandered the Court's generous extension of time until April 30, 2021 for the defendants to fully respond:

```
 1         THE COURT:  All right.  Now, I don't want to hear
 2    anything else from you, Mr. Ukpabi.  Okay.
 3         So we already had a conference on this previously
 4    where we discussed this in some detail.  There was -- there was
 5    a pending motion to compel, Mr. Ukpabi, because of the failure
 6    on your part and on your client's part to produce materials
 7    that were required under our discovery rules.
 8         Now, even after the Court ordered your client to
 9    produce materials, your client has failed to do so, you have
10    failed to do so.  That is sanctionable conduct.  I told you
11    that you would be sanctioned if you did not comply with the
12    Court's order.  You have not done so.
```

*See* ECF No. 82, PageID 2007.  Even after being warned a second time about the seriousness of their misconduct, the defendants still have not produced any additional materials to Allstate.  This is the sort of "contumacious conduct" that warrants default.  *See* <u>Annabel</u>, 2019 U.S. Dist. LEXIS 68626 at *2, citing <u>Reves</u>, 307 F.3d at 458.

There also can be no question that Allstate has been severely prejudiced by the defendants' failure to respond to discovery.  The defendants' continued failure to produce the responsive documents requested by Allstate makes it impossible for

Allstate to move forward with prosecuting its case, including preventing it from conducting additional third-party discovery, engaging its billing and medical experts, identifying deponents, and scheduling deposition testimony.

Finally, the Court has expressly warned the defendants twice that they may face sanctions due to their discovery misconduct. The Court's March 15, 2021 Order expressly warned the defendants that "[f]ailure to comply with this Court's order to produce discovery will result in sanctions." *See* ECF No. 68, PageID 1582. The Court then repeatedly and extensively advised the defendants that their violation was serious and could result in default judgment if not remedied during the hearing on May 14, 2021. *See* ECF No. 82. The defendants have done absolutely nothing in response to these warnings, including not producing a single additional document in the two (2) weeks since the May 14, 2021 hearing.

For all of these reasons, the Court should enter default judgment against the defendants as a sanction for their failure to participate in discovery and their violation of several Court Orders. Such an order is both warranted by the facts of this case and consistent with other similar cases. *See, e.g.,* <u>Annabel</u>, 2019 U.S. Dist. LEXIS 68626 at *8 -*11 (in which the court recommended entry of default judgment where the defendant disregarded multiple court orders and failed to provide the plaintiff with revised discovery responses as ordered, and noting that the court "has little trouble concluding that [the defendant's] behavior in this case is due to

willfulness or bad faith and amounts to contumacious conduct as defined by the Sixth Circuit"); Berry v. Ocwen Loan Servicing, 2020 U.S. Dist. LEXIS 40353, *3-*5 (W.D. Tenn. Mar. 9, 2020) (entering case-terminating sanctions against a litigant who failed to produce documents in response to discovery requests six (6) months after such requests were served, and finding that warnings of dismissal and award of costs were ineffective at correcting the litigant's conduct); Laues-Gholston v. Mercedes-Benz Fin. Servs. USA, LLC, 2014 U.S. Dist. LEXIS 184021 (E.D. Mich. Nov. 28, 2014) (case-terminating sanctions entered as a result of discovery violations even though the litigant was *pro se*, because his conduct was obstructionist and in bad faith).

The circumstances of the defendants' discovery misconduct in this action are remarkably similar to those in a similar RICO/fraud action in which the Honorable Judge Friedman entered default judgment in Allstate's favor in 2018. *See* Allstate Insurance Company, et al. v. Summit Physicians Group, et al., 16-cv-13657-BAF-DRG, Docket No. 220 (E.D. Mich. Dec. 3, 2018). In that case, like here, the Court and Allstate made every possible effort to obtain compliance from the defendants, including repeated hearings and conferences at which the defendants were cautioned that their continued non-compliance would lead to default judgment:

> As to the Court's reasoning regarding the entry of default judgment, the Court indicated at the hearing that it relied on this matter's extensive record in making its decision. The Court held status conferences and/or hearings in March, April, May, June, July, August, and November 2018

to discuss discovery matters, the appointment of a discovery master, and the consequences of non-compliance with the Court's orders, such as costs, sanctions, and default judgment. Plaintiffs, who filed the complaint over two years ago, were prejudiced by the defendants' non-compliance, as reflected by the Court's prior orders imposing costs and sanctions on defendants and/or their attorneys. Further, defendants were warned in August 2018 that judgment would be entered against them if they failed to comply with the Court's order regarding the completion of discovery. "[A] prior warning that failure to comply with a discovery order will result in dismissal is pivotal both to the determination of willfulness and to the ultimate decision to dismiss." *Field v. Unified Holding Int'l*, No. 10-12829, 2013 WL 607770, at *3 (E.D. Mich. Jan. 30, 2013) (citing *Harris v. Callwood*, 844 F.2d 1254, 1256 (6th Cir. 1988)).

*See* Exhibit K. Judge Friedman's reasoning applies equally to this case.

In addition, the Court should impose significant monetary sanctions against the defendants, including awarding Allstate its costs and attorney's fees incurred as a result of its ongoing efforts to obtain the discovery to which it is indisputably entitled pursuant to Fed. R. Civ. P. 37(b)(2). *See* Annabel, 2019 U.S. Dist. LEXIS 68626 at *3 - *4 ("[a] court may also, in addition to or as an alternative to [the entry of default judgment] direct 'the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure' to comply with the court Order"), quoting Fed. R. Civ. P. 37(b)(2)(C).

## V.   **CONCLUSION**

Allstate and the Court have taken every reasonable step to obtain basic good faith participation in discovery by the defendants, all to no avail. The defendants have not taken any steps to remedy their clear deficiencies even as the Court has

repeatedly warned of sanctions and default judgment.  It is simply not possible to prepare a case for trial, particularly one of this magnitude and complexity, when parties utterly ignore their discovery obligations and the Court's Orders.  Allstate has been deprived of more than half of the discovery period already due to the defendants' misconduct, and there is no end in sight.  Allstate respectfully submits that the only appropriate remedy now is default judgment.

Respectfully submitted,

SMITH & BRINK

*/s/ Andrew H. DeNinno*

_____

Richard D. King, Jr.
rking@smithbrink.com
Nathan A. Tilden (P76969)
ntilden@smithbrink.com
Jacquelyn A. McEttrick
jmcettrick@smithbrink.com
Andrew H. DeNinno
adeninno@smithbrink.com
William G. Potter
wpotter@smithbrink.com
38777 Six Mile Road, Suite 314
Livonia, MI 48152
(734) 521-9000

350 Granite Street, Suite 2204
Braintree, MA 02184
(617) 770-2214

*Attorneys for Plaintiffs*

Dated: May 27, 2021

## <u>CERTIFICATE OF SERVICE</u>

I, Andrew H. DeNinno, counsel for Plaintiffs, hereby certify that on May 27,

2021, I electronically filed the foregoing papers with the Clerk of the Court using

the ECF system, which will send notification of such filing to all counsel of record.

SMITH & BRINK

*/s/ Andrew H. DeNinno*
_____

Andrew H. DeNinno
adeninno@smithbrink.com
38777 Six Mile Road, Suite 314
Livonia, MI 48152
(734) 521-9000

350 Granite Street, Suite 2204
Braintree, MA 02184
(617) 770-2214